294 F.2d 240
 111 U.S.App.D.C. 44, 41 P.U.R.3d 31
 James H. RANGER, William R. Sinclair, and Ed J. Zuchelli,
d/b/a Radio Cabrillo, Appellants,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee.
Edward E. Urner and Bryan J. Coleman, d/b/a Cal-Coast
Broadcasters, Intervenors.
 No. 15714.
 United States Court of Appeals District of Columbia Circuit.
 Argued Feb. 9, 1961.
Decided April 20, 1961.
 
 Mr. Richard Hildreth, Washington, D.C., for appellants. Mr. Robert L. Heald, Washington, D.C., also entered an appearance for appellants.
 Mr. Max D. Paglin, now General Counsel, Federal Communications Commission, Washington, D.C., with whom Mr. John L. FitzGerald, General Counsel of the Federal Communications Commission at the time the brief was filed, and Mr. Richard M. Zwolinski, Counsel, Federal Communications Commission, Washington, D.C., were on the brief, for appellee.
 Mr. J. Roger Wollenberg, Washington, D.C., with whom Mr. Andrew G. Haley, Washington, D.C., was on the brief, for intervenors. Mr. Donald L. Rushford, Washington, D.C., also entered an appearance for intervenors.
 Before PRETTYMAN, WASHINGTON and BURGER, Circuit Judges.
 PRETTYMAN, Circuit Judge.
 
 
 1
 This is an appeal[1] from an order of the Federal Communications Commission, denying reconsideration of a prior order, which had dismissed appellants' application for a standard broadcast station. The order of dismissal also denied reinstatement of the application nunc pro tunc its filing date.
 
 
 2
 Atascadero and Santa Maria are towns in California located about forty miles apart. On June 9, 1958, parties operating as 'Radio Atascadero' filed an application for a broadcast station at Atascadero. On November 26, 1958, parties trading as 'Cal-Coast Broadcasters' filed an application for a broadcast station at Santa Maria. These two applications were mutually exclusive, and a comparative hearing was thus required. On April 20, 1959, our appellants, trading as 'Radio Cabrillo', filed an application for a broadcast station in Atascadero. The Commission returned this latter application as incomplete under its rules. Appellants' effort, both before the Commission and here, is to secure a place as a party in the comparative hearing.
 
 
 3
 Appellants argue that, having determined that their application was incomplete, the Commission was required by Section 309(b) of the statute[2] to notify them to that effect, to advise them of all objections to the application, and to afford them an opportunity to reply; and, further, that if the Commission was not satisfied after considering such reply it was required to designate the application for hearing. The Commission found, and we agree, that appellants' application failed in a number of material respects to comply with the rules of the Commission as to the contents of applications. The Commission addressed a letter to appellants specifying these deficiencies. Among them were failure to submit a schedule of programs for a typical week, failure to answer a question as to whether the applicant was controlled by any person who had an interest in any broadcast station, failure to show the date of the partnership agreement of the applicant, failure to submit an exhibit referred to in the list of exhibits in the application, failure to submit a balance sheet for one partner and an income statement for another other partner, and the verification of a financial statement after the date of verification of the application itself.
 
 
 4
 We think an applicant for a radio license who either ignores or fails to understand clear and valid rules of the Commission respecting the requirements for an application assumes the risk that the application will not be acceptable for filing. A radio license is an operating authority of importance, involving primarily the interest of the public. If the rules as to the required information were either unclear or invalid, an applicant might have substantial grounds upon which to complain if an application were not received for filing. But no such claim is made in this case.
 
 
 5
 The statute specifically provides[3] that 'All application for station licenses * * shall set forth such facts as the Commission by regulation may prescribe as to (alist of topics); and such other information as it may require.' On the face of the application form is the following paragraph, in large type:
 
 
 6
 'Be sure all necessary information is furnished and all paragraphs are fully answered. If any portions, of the application are not applicable, specifically so state. Defective or incomplete applications may be returned without consideration.'
 
 
 7
 We are of opinion that Section 309(b), the pertinent portion of which is quoted in note 2, supra, was intended to apply to what might be termed questions of substance. In other words, the section means that if, with the required information before it, the Commission is unable to make a determination as to whether a grant of the application would serve the public convenience, interest or necessity, it must notify the applicant, receive his reply, and, if the reply be not satisfactory, designate the application for hearing. We think the section does not apply where an application is lacking in material respects, the applicant having failed to supply the Commission with information obviously necessary to a consideration of its merit in the public interest. Of course there are borderline cases in which an application approaches essential completeness but is lacking in minor respects. In such a case the Commission should give weight to the interest of the applicant and channel the application through the procedure established with that in view; and we understand from its brief here that such is the Commission's policy. But we think Congress did not intend by this section of the statute to require the formality of Commission consideration of and hearing on an application in which the signatory obviously fails in major material respects to abide the regulations. The Commission obviously has power to require conformance with regulations prescribing the material with which it must be furnished. If this were not so, any obstructionist could easily prevent indefinitely the consideration of an application by merely filing skeleton competing applications.
 
 
 8
 Appellants also argue that a change in the regulations of the Commission which operated to shut of their application before it could be rewritten and proffered for filing, was invalid. The Ashbacker doctrine, Ashbacker v. F.C.C., 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108, as we have remarked before now, created some very practical and difficult administrative problems. One of these arises from late filing of competing applications. Obviously, if all valid conflicting pending applications must receive a comparative hearing, late filings create procedural difficulties. Particularly is this so in view of what is described in this litigation as a chain reaction. Let us assume three towns, A, B and C, Fifty miles apart in a straight geographical line. Application for a broadcast station at A is made. Grant of that application would preclude a station at B on the same or an adjacent channel; it would not affect the possibility of a station at C. Before the application for A has been acted upon, an applicant files for a license at B and asks for a comparative hearing with A. A grant in B would preclude a station at C. Therefore potential applicants for C must file in the A-B case in order to protect their rights. Theoretically this reaction could go on indefinitely and could eventually involve every potential broadcast-station situs in the United States.
 
 
 9
 In order to avoid these hopeless involvements the Commission established a 'cut-off' date, which originally was the day before a prior-filed application was either granted or designated for hearing. Due to the time necessarily consumed in the mechanics of processing at the Commission, this method could potentially prolong indefinitely the time for hearings. For example, an application might have undergone its processing and be on the verge of grant (or, if there were two pending, on the verge of compartive hearing) when a late-comer would file. Such a late-comer must go through the mechanics of processing before any application for that channel could be heard; and so on indefinitely. Therefore the Commission, on April 9, 1959, announced an amendment to its regulations[4] which instituted a new system. Under this system the Commission periodically publishes a list of applications that are near the top of the processing line. At the same time it announces a date, at least thirty days from publication, by which competing applications must be filed if they are to receive comparative consideration with any application on the list. The cut-off date thus established is an alternative to the cut-off date under the old system, the effective date being the earlier of the two. A pending application is said to achieve 'protected status' when the applicable cut-off date has arrived.
 
 
 10
 In the case at bar the Commission published its initial list of cut-off dates on April 9, 1959, the day it adopted the new regulation. On that list the application of Radio Atascadero was listed, to achieve a protected status on May 15, 1959. In its original form the application of Radio Cabrillo, appellants here, was filed April 20, 1959, and was returned by ordinary mail on May 11, 1959.
 
 
 11
 Appellants say the amendment to the regulations required a formal rulemaking procedure and, not having been put through that procedure, was not legally adopted. But the Administrative Procedure Act excepts from formal rulemaking requirements amendments which effect only procedural changes.[5] The Commission insists that the amendment here involved was a procedural change, and we agree. Of course all procedural requirements may and do occasionally affect substantive rights, but this possibility does not make a procedural regulation a substantive one. No substantive rights were actually involved by the regulation itself; failure to observe it might cause the loss of substantive rights. Some such rule was necessary to meet the problems created by the Ashbacker doctrine, and the manner of coping with the difficulty lies within the discretion of the Commission, so long as its solution is reasonable.
 
 
 12
 Appellants argue further that the delay on the part of the Commission in returning the incomplete application was unreasonable and denied them the opportunity of filing a completed application before the fixed cut-off date. They say also taht the Commission, when it returned their application, knew of the impending cut-off date for Radio Atascadero and that it abused its discretion in refusing to allow nunc pro tunc filing of the completed application. We think the point is untenable. Appellants were on notice when they filed their application that the cut-off date for comparative consideration with a pending application was May 15th. Thus they were on notice that an application by them must be in such condition by that date as to entitle them to comparative hearing. When they failed to comply with the clear and valid rule they assumed the risks of that failure.
 
 
 13
 Obviously time is required for the staff of the Commission to give a preliminary examination to application so as to determine whether they are in such form as to justify formal processing. We think 21 days in not an unreasonable time for this identification and preliminary examination, in view of the vast caseload which the Commission must process. Of course the determination that a given application will possibly create interference with a pending application must be the result of an examination by engineers, and this indeed takes time. Prior to that study the Commission has no means of identifying from among the many applications filed with it which of them may eventually be mutually exclusive; and, when it returns an incomplete application-- the result of a preliminary examination by the clerical staff,-- it cannot be charged with knowledge of an impending cut-off date.
 
 The order of the Commission is
 
 14
 Affirmed.
 
 
 
 [1]
 Under Sec. 402(b) of the Communications Act of 1934 as amended, 47 U.S.C.A. 402(b)
 
 
 [2]
 47 U.S.C.A. 309(b), as it existed at the time of this proceeding before the Commission and until its amendment September 13, 1960, 74 Stat. 889, provided, in pertinent part: 'If upon examination of any such application the Commission is unable to make the finding specified in subsection (a), it shall forthwith notify the applicant and other known parties in interest of the grounds and reasons for its inability to make such finding. Such notice, which shall precede formal designation for a hearing, shall advise the applicant and all other known parties in interest of all objections made to the application as well as the source and nature of such objections. Following such notice, the applicant shall be given an opportunity to reply. If the Commission, after considering such reply, shall be unable to make the finding specified in subsection (a), it shall formally designate the application for hearing * * *.'
 
 
 [3]
 Sec. 308(b), 47 U.S.CA. 308(b)
 
 
 [4]
 18 P & F RR 1565
 
 
 [5]
 60 Stat. 238 (1946), 5 U.S.C.A. 1003