**CENTURY BROADCASTING CORPO-**
**RATION, Appellant,**

v.

**FEDERAL COMMUNICATIONS COM-**
**MISSION, Appellee.**

**No. 16853.**

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 11, 1962.

Decided Nov. 8, 1962.

Mr. Howard J. Schellenberg, Jr., Washington, D. C., for appellant.

Mr. Alan D. Reffkin, Counsel, Federal Communications Commission, with whom Messrs. Max D. Paglin, Gen. Counsel, Daniel R. Ohlbaum, Asst. Gen. Counsel, and Mrs. Ruth V. Reel, Counsel, Federal Communications Commission, were on the brief, for appellee.

Mr. Joseph F. Hennessey, Washington, D. C., with whom Mr. Robert M. Booth, Jr., Washington, D. C., was on the brief,

for Monroeville Broadcasting Co. as amicus curiae.

Before BAZELON, Chief Judge, and BURGER and WRIGHT, Circuit Judges.

BURGER, Circuit Judge.

The Federal Communications Commission adopted a Memorandum Opinion and Order January 8, 1962, returning without filing appellant's application for a new standard broadcast station on 1510 kilocycles (kc) at Jeannette, Pennsylvania. The reason given for this action was untimely tender of the application. At the same time the Commission dismissed appellant's petition for reconsideration of its action. This appeal is from the January 8 Opinion and Order.

In accordance with its Rules § 1.354 (c), 47 C.F.R. 1.354(c) (1958), the Commission on December 22, 1959, had issued a public notice, 24 Fed.Reg. 10416 (1959), listing standard broadcast applications, including the application of WXEN for a station at Xenia, Ohio, which were ready for processing and also fixed January 22, 1960, as the cut-off date for the filing of competing applications. To be eligible for comparative consideration an application was required to be filed before the cut-off date.

Prior to the cut-off date the Commission received applications for stations at three other nearby points which involved possible interference conflicts with the Xenia, Ohio, application. Public notice was given of the acceptance for filing of these applications. On April 19, 1961, the Commission designated 14 conflicting applications, including Xenia and the three nearby points—Monroeville, Pittsburgh and Ambridge-Aliquippa, Pennsylvania, for a consolidated hearing.

Appellant first tendered an application on August 21, 1961, for a new standard broadcast station at Jeannette, Pennsylvania. This application was mutually exclusive with the earlier applications of Monroeville, Pittsburgh and Ambridge-Aliquippa and appellant requested a comparative hearing. This was rejected as untimely under Rules § 1.106(b)

(1) (i), 47 C.F.R. § 1.106(b) (1) (i) (Supp.1962), and § 1.106(b) (1), 47 C.F.R. § 1.106(b) (1) (Supp.1962). Appellant again tendered its application challenging the validity of the hearing designation order as a bar to a comparative hearing. Upon denial of reconsideration this appeal followed.

Appellant interprets Rules § 1.354(c) to mean that the Commission may not cut-off an application, which is mutually exclusive with those already filed, unless the Commission establishes and publishes a cut-off date for applications in conflict with those designated in the public notice. Appellant contends that Rules § 1.106(b) (1) provides for only one possible cut-off, i. e., the date specified as the cut-off date in the published notice or the day prior to Commission action on prior applications, whichever is earlier. Appellant concludes that the published date is the cut-off *unless* the Commission acts sooner by taking action on a previously filed application. Finally, appellant says that if the earlier cut-off date is ineffective in cutting off a particular applicant's rights, the other cut-off provided for in § 1.106(b) (1) may not be applied in the alternative.

■ The Commission concedes that the December 17, 1959, notice fixing January 22, 1960, as the cut-off date was ineffective as to appellant because of failure to list a station in conflict with appellant's application. See Ridge Radio Corp. v. F. C. C., 110 U.S.App.D.C. 277, 292 F.2d 770 (1961).

The construction urged by the appellant of Rules § 1.106(b) (1) ignores the purpose for which it was promulgated and amended. When the Supreme Court established the rule that mutually exclusive frequency applications must be given comparative consideration, it pointed out that no regulation of the Commission existed at that time "which, for orderly administration, requires an application for a frequency, previously applied for, to be filed within a certain date." Ashbacker Radio Corp. v. F. C. C., 326 U.S. 327, 333 n. 9, 66 S.Ct. 148, 90 L.Ed. 108 (1945). In Ranger v. F. C. C., 111 U.S. App.D.C. 44, 294 F.2d 240 (1961), the court described the procedural difficulties that faced the Commission under Ashbacker, namely chain reaction filing problems. It was pointed out that in order to expedite processing of applications the Commission established a cut-off date, which originally was the close of the day prior to the day a previously filed application was either granted or designated for hearing. This method of processing created problems because of the possibility that two applications might be completely processed and ready for hearing and then a third would be filed before the first two were designated for hearing. As a result the hearing would be delayed until the third application was processed. On April 9, 1959, the Commission amended its regulations to rectify the situation. In the Ranger opinion we observed:

> "Under this system the Commission periodically publishes a list of applications that are near the top of the processing line. At the same time it announces a date at least thirty days from publication, by which competing applications must be filed if they are to receive comparative consideration with any application on the list. The cut-off date thus established is an alternative to the cut-off date under the old system, the effective date being the earlier of the two. A pending application is said to achieve 'protected status' when the applicable cut-off date has arrived." 111 U.S.App.D.C. at 47, 294 F.2d at 243.

Judge Prettyman's discussion accurately reflects the position of the Commission. See Revision of AM Processing Procedures, 18 Pike & Fischer R.R. 1565, 1567 (1959).

■ There is no merit to the appellant's position that a published list of filed applications and the establishment of a cut-off date is the sine qua non for cutting off subsequent applications. Further, in view of the development of the Rules § 1.106(b) (1), the construction

of that section urged by appellant is artificial. There is no suggestion that the amendment was intended to reduce the flexibility of action open to the Commission. The reasonable interpretation is that Rules § 1.106(b) (1) contains alternative cut-off dates, either of which is sufficient to close the door on subsequent applicants should the first one in time be ineffective.

■ Appellant argues that the use of the cut-off date provided in Rules § 1.106(b) (1) (i), i. e., the close of the day preceding the day when a previously filed application is designated for hearing, is invalid, apparently on due process grounds, because the establishment of such a cut-off date "does not fairly advise prospective applicants but only advises of a fait accompli." But there would be serious questions of validity raised if the Commission attempted to grant licenses without giving notice to possible conflicting applicants before the award of a frequency was made. See Ridge Radio Corp. v. F. C. C., supra. However, the record in this case establishes that appellant was on constructive notice for more than a year before it was precluded from comparative consideration with the previously filed applications.

Commission Rules § 1.359(b), 47 C.F.R. 1.359(b) (Supp.1962) provides that:

> "No application subject to the provision of this section * * * will be acted upon by the Commission less than 30 days following issuance of public notice of the acceptance of or filing of such application * * *."

The plain meaning of this section is that the Commission will give public notice of receipt of applications and will defer action for thirty days to enable possible conflicting applications to be filed. When the Commission amended Rules § 1.106 (b) (1) it was made clear that this in no way affected the established method of notice. In its memorandum entitled Revision of AM Processing Procedures, 18 Pike & Fischer R.R. 1565, 1567 (1959), the Commission said:

> "Potential applicants, as in the past, must be guided in their decisions as to filing their applications by the public notices of the acceptance for filing of competing applications and the status of the process line."

This type of notice provided the public warning appellant claims it was denied. The only difference between this notice under Rules § 1.359(b) and § 1.106(b) (1) (i) and that under § 1.106(b) (1) (ii) is that under the former a prospective applicant knows that it will be cut-off sometime after 30 days from the notice; under the latter the applicant is apprised of a specific cut-off date which is the last possible filing date, if the Commission does not act sooner. In both cases the prospective applicant may avail himself of the public notice issued by the Commission which contains the name of the previously filed conflicting application.

■ In this case, appellant was apprised of previously filed conflicting applications of Monroeville, Pittsburgh and Ambridge-Aliquippa. On January 25 and 27, 1960, the Commission gave public notice that the Monroeville, Pittsburgh and Ambridge-Aliquippa applications had been "accepted and tendered for filing." (Public Notices B–83391, and B–83458). Under Rules § 1.359(b), the Commission was bound not to act on the application for at least thirty days. This allowed reasonable time for possible applications to be filed so that they would receive comparative consideration. In fact, the Commission did not act until April 19, 1961, when it designated the filed applications for hearing—a period of more than a year. Appellant did not file its application until August 21, 1961, a period of four months *after* the filed applications were designated for hearing.

The Commission's determination that such application was untimely must be affirmed.

Affirmed.