**RADIO ATHENS, INC., (WATH), Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**
**Valley Broadcasting, Inc., Intervenor.**

**No. 21476.**

United States Court of Appeals
District of Columbia Circuit.

Argued April 18, 1968.

Decided July 9, 1968.

Lauren A. Colby, Washington, D. C., for appellant.

Mr. Joseph A. Marino, Counsel, Federal Communications Commission, with whom Messers. Henry Geller, General Counsel, John H. Conlin, Associate General Counsel, and Mrs. Lenore G. Ehrig, Counsel, Federal Communications Commission, were on the brief, for appellee.

Mr. Grover C. Cooper, Washington, D. C., for intervenor.

Before BASTIAN, Senior Circuit Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

LEVENTHAL, Circuit Judge:

On November 21, 1966, Valley Broadcasting, Inc., filed an application for a new standard broadcast station (WNAL) to be located in Nelsonville, Ohio, requesting operation on 940 kc with 250 watts of power. In a public notice on April 5, 1967, the Federal Communications Commission assigned May 11, 1967, to the Valley application as the cut-off date. The public notice was pursuant to Commission rules [1] and advised that an applicant seeking a comparative hearing with any of the listed applications (or with any applications filed before the deadline which were mutually exclusive with the listed applications) must file a "substantially complete" application by May 11. On May 11, appellant, licensee of Radio Station WATH, Athens,

---

1. 47 C.F.R. § 1.571(c) (1968) provides in part:

In order that those applications [for standard broadcast facilities] which are entitled to be grouped for processing may be fixed prior to the time processing of the earliest filed application is begun, the Commission will periodically publish in the Federal Register a Public Notice listing applications which are near the top of the processing line and announcing a date (not less than 30 days after publication) on which the listed applications will be considered available and ready for processing and by which all applications excepting those specified in exception (2) in this paragraph must be filed if they are to be grouped with any of the listed applications.

47 C.F.R. § 1.227(b) (1) (1968) provides in part:

In broadest cases, no application will be consolidated for hearing with a previously filed application or applications unless such application, or such application as amended if amended so as to require a new file number, is substantially complete and tendered for filing by whichever date is earlier: (i) The close of business on the day preceding the day the previously filed application or one of the previously filed applications is designated for hearing; or (ii) * * * [the date set in the Federal Register notice authorized by Rule 1.571(c) supra].

See 47 C.F.R. § 1.591(b) (1968).

Ohio, filed an application for a construction permit to increase the power of its station, operating on 970 kc, from one to five kilowatts. This application is concededly mutually inconsistent with Valley's application.

On June 2, the Commission wrote appellant that there were errors in its engineering data and that an amendment to the application ought to be filed,[2] and on June 9 appellant sent the Commission the necessary amended engineering statement. On June 12, the Commission returned appellant's application with a letter explaining that it was "not acceptable for filing." The consequence of rejecting the application was to cause appellant to miss the cut-off date for a comparative hearing with Valley, since consideration of the proposed construction permit would now require a new and necessarily tardy application.

The authority by which the Commission rejected appellant's application was Rule 1.566(a) which provides, in pertinent part:

> Applications which are determined to be patently not in accordance with the Commission's rules, regulations, or other requirements, unless accompanied by an appropriate request for waiver, will be considered defective and will not be accepted for filing or if inadvertently accepted for filing will be dismissed.[3]

The patent defect found after the application had been pending for about a month, and after the engineering flaw had been noted and corrected,[4] consisted of an alleged violation of the Commission's duopoly rule. That rule provides, in part:

> No license for a standard broadcast station shall be granted to any party

(including all parties under common control) if: (a) Such party directly or indirectly owns, operates, or controls one or more standard broadcast stations and the grant of such license will result in any overlap of the predicted or measured 1 mv/m groundwave contours of the existing and proposed stations. * * *[5]

The Commission's letter of June 12 rejecting appellant's application explained that the multiple ownership violation was established by Commission records and the overlap violation was revealed by the application.

The Commission records referred to indicated that A. H. Kovlan owned 70% of the stock of Radio Athens and that he was its president and one of five directors. In addition, Commission files indicated that Kovlan owned 32.5% of the stock of Radio Mid-Pom, Inc., and was its treasurer and one of four directors. That company is the licensee of Station WMPO, Middleport-Pomeroy, Ohio. The application revealed that the proposed power increase of WATH would increase the overlap with WMPO beyond the 1 mv/m contours. These facts, claims the Commission, show that the application was patently in violation of the duopoly rule rendering the application defective and justifying its rejection.

It is with increasing frequency that we have been called upon to review the draconian effects generated by Commission use, in combination, of the cut-off rule and the rule authorizing dismissal of an application containing a patent non-conformance with other Commission rules.[6] We have taken occasion to acknowledge and approve the device of cut-off as a reasonable and necessary

---

2. The invitation to amend the application even after the cut-off date accords with Commission policy set out in rule 1.227 (b) (1), *supra* note 1. *See* James River Broadcasting Corp. v. FCC, 130 U.S. App.D.C. 210, 399 F.2d 581 (July 5, 1968).

3. 47 C.F.R. § 1.566 (1968).

4. Cf. James River Broadcasting Corp. v. FCC, *supra* note 2.

5. 47 C.F.R. § 73.35 (1968). Note 1 to the rule explains that "The word 'control' as used herein is not limited to majority stock ownership, but includes actual working control in whatever manner exercised."

6. James River Broadcasting Corp. v. FCC, *supra* note 2; Natick Broadcast Associates, Inc. v. FCC, 128 U.S.App.D.C. 203, 385 F.2d 985 (1967).

limitation on the statutory right to a comparative hearing.[7] There must be some point in time when the Commission can close the door to new parties to a comparative hearing or, at least hypothetically, no licenses could ever be granted.[8] Similarly, we have approved the Commission's power pursuant to its rules to reject applications that are patently defective.[9] The Commission will not be required to keep on file applications that cannot be granted, and such requests for facilities can be amended[10] or even returned to the applicant for alteration and refiling.[11]

■ We are concerned, however, when these two rules, quite different in the purposes they are legitimately designed to advance, are applied so as to deprive a potential broadcaster from a comparative hearing on a timely-filed, substantially complete application. There is a palpable public interest in assuring that the limited remaining broadcast facilities go to the best qualified applicant, and the comparative hearing has evolved as a fair and meaningful procedure for selecting the applicant who is best qualified.[12] There is also an interest in pro-

cedures and administrative techniques that enable the Commission to handle its work load efficiently, and with optimum use of limited administrative resources. Perhaps the Commission can accommodate the various interests by adopting administrative expedients that, for example, explicitly require all applications to be letter-perfect when filed. The prevailing Commission rules, however, did not give such notice of a fault-free approach as to make the shunting aside of appellant's application, without a hearing, consonant with elemental fairness and the spirit of the legislative requirement of hearing.

■ The Commission rule against multiple ownership, invoked here to dismiss the application as "patently" defective, applies by its terms to persons who "own, operate, or control" overlapping facilities. In our view, such a rule cannot be said to apply on its face, without the need for hearing, to disqualify one who owns less than $\frac{1}{3}$ of the stock of a close corporation, even though he is an officer and one of four directors.[13] These interests may well permit a conclusion that there is control in fact.[14]

7. *See* Ranger v. FCC, 111 U.S.App.D.C. 44, 294 F.2d 240 (1961); Ridge Radio Corp. v. FCC, 110 U.S.App.D.C. 277, 292 F.2d 770 (1961); Century Broadcasting Corp. v. FCC, 114 U.S.App.D.C. 59, 310 F.2d 864 (1962). The genesis of the cut-off rule probably was the Supreme Court's observation in Ashbacker Radio Corp. v. FCC, 326 U.S. 327, 333 n. 9, 66 S.Ct. 148, 90 L.Ed. 108 (1945).

8. *See* Ranger v. FCC, *supra* note 7; 1 K. DAVIS, ADMINISTRATIVE LAW TREATISE § 8.12 (1965 Pocket Supplement).

9. Ranger v. FCC, *supra* note 7.

10. *See* James River Broadcasting Corp. v. FCC, *supra* note 2.

11. It is apparently not the purpose of the rejection rule (§ 1.566) to deter the filing of applications disclosing rule violations since there is no fine or other penalty for such filings, and the applicant can usually merely correct the error and re-file. This latter fact also indicates that the purpose of the rule is not to conserve Commission time from ever having to deal with the request.

12. Ashbacker Radio Corp. v. FCC, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945).

13. Paragraph (b) of the multiple ownership rule advises that a license will not be granted to any party not only if there is joint ownership, operation, or control, but also if a "party, or any stockholder, officer or director of such party * * * has any interest in, or is an officer or director of any other standard broadcast station," and if, in addition, the grant would not be consistent with the public interest. Although paragraph (b) is, in other respects, both broader and narrower than paragraph (a), the much more inclusive concept of cross-interest spelled out in that clause reinforces our view that the "owns, operates, or controls" language by itself does not adequately advise a license applicant that any cross-interest *per se* violates the rule.

14. *See* Lorain Journal Co. v. FCC, 122 U.S.App.D.C. 127, 351 F.2d 824 (1965), cert. denied *sub nom.* W. W. I. Z., Inc. v. FCC, 383 U.S. 967, 86 S.Ct. 1272, 16 L.Ed.2d 308 (1966).

But such a rule by itself does not advise a person that such interests constitute control as a matter of law, so that an application will be "patently" violative of Commission rules and subject to rejection unless accompanied by a request for waiver.

The Commission argues that whatever ambiguity there was in its multiple ownership rule was cured by the expansive construction that rule has been given— a construction the Commission contends established that the rule is operative in any case of cross interest, whether or not the interest is tantamount to ownership, operation, or control. As evidence of this construction, we are referred [15] to five Commission decisions which we shall now discuss.

In Macon Broadcasting Co., 10 F.C.C. 444 (1945), a Macon, Georgia, radio station was granted a construction permit but as a condition of the grant, the two majority stockholders were ordered to divest themselves of "any connection with" another competing Macon, Georgia station. In Minnesota Broadcasting Corp., 13 F.C.C. 672 (1949), the Commission emphasized its rigid policy against allowing *"any* common ownership between broadcast stations *in the same city* in the interest of promoting and maintaining full competition. * * *" [Latter emphasis added.] These opinions do not fairly advise a reasonable applicant that the construction of a *per se* doctrine against any common ownership interest would reach interests of stations in different cities.

In Shenandoah Life Ins. Co., 19 Pike & Fischer R.R. 1 (1959), the Commission declined to grant a request for waiver of the rule filed by a Roanoke, Virginia, station desiring to elect as a director a Mr. Saunders who was also a director of a bank which owned a majority of the stock of another Roanoke station. The Commission referred to—

the long-standing policy * * * promulgated under said rules, against permitting *any* degree of cross-interest, direct or indirect, in two or more stations in the same broadcast service serving substantially the same area.

This brings us to the next Commission citation, Carolina Broadcasting Service, 25 Pike & Fischer R.R. 515 (1963). In that case, the Commission ordered a licensee to rectify, within 45 days, a violation of the duopoly rule held to exist where: a Mr. Lamm was a ⅓ owner and director of Station WMPM, Smithfield, North Carolina; Mr. Lamm also was a salesman for Station WCKB, Dunn, North Carolina, and did some announcing at WCKB's auxiliary studio in Smithfield; and Station WMPM was the only station licensed to serve Smithfield. The Commission noted: "With only minor variations based upon exceptional circumstances, the Commission has consistently refused to permit any degree of common ownership between stations in the same service in the same city." It explained: "A basic reason for this policy is to insure that full competition will be maintained between such stations." And in the course of the opinion, in holding that Mr. Lamm's "dual position as outlined above" violated the duopoly rule, it was observed that, "In the past, we have often conditioned grants of new stations so as to require a party to the applicant who is a key employee of another station in the same area to sever his connections with the existing station." In our view *Carolina Broadcasting Service* failed to provide appellant with a clear signal that his interests in WATH and WMPO were within the proscriptions of the duopoly rule. Although it is apparent that Mr. Lamm's two stations were centered in different cities, his activities for both stations were performed in the same city. There may be good reasons why the duopoly rule should also be applied to appellant, but its ap-

---

15. "[T]he rule [§ 73.35(a)] is not restricted to those who exercise actual or legal control. It also applies in cases of cross-ownership or management of radio stations. Cf. * * * [citing the five decisions]." Brief of Appellee p. 11.

plication to appellant does not follow automatically from anything the Commission said or did in *Carolina Broadcasting Service*.

Finally we come to William F. Huffman Radio, Inc., FCC Dkt. No. 67–918 (1967), which does set forth a principle extending the duopoly rule to any cross interests (of stations within the 1 mv/m overlap). The *Huffman* decision was and remains unreported, and was not rendered until August 2, 1967, almost three months after appellant's cut-off date. The Commission cannot reasonably cite *Huffman* as showing that appellant was given fair notice that its May application was "patently not in accordance" with Commission rules.

Moreover, and significantly, in all the cases relied upon by the Commission the consequence of finding a violation of the duopoly rule was not action that blocked consideration of the application. The rule itself does not indicate that an application with a duopoly problem will be dismissed without consideration, but merely advises that a license will not be granted if the multiple ownership violation persists.[16] This is consonant with the action of the Commission in each of the five cases relied upon to establish the expanded reading of the "owns, operates, or controls" language. As the Commission observed in *Minnesota Broadcast Corp., supra,—*

> In numerous instances, the Commission has attached conditions to grants of construction permits for AM and FM stations making such grants conditional upon the elimination of common stock ownership and common officers and directors with existing stations in the same city.

This statement of the Commission's usual procedure for dealing with a duopoly problem was also part of the Commission's policy. We need not consider whether it could be demanded by an applicant who plainly controlled or owned two overlapping stations. But this practice of satisfying the duopoly rule by conditional grants certainly must be weighed in the balance if the Commission is to be heard to argue that a rule expressed in terms of "own, operate, or control" is so "patently" the same thing as "any cross interest" that an application showing a cross interest will be debarred from any consideration on the merits. In the case at bar, appellant, upon being informed that the application was rejectable since the grant of it would violate the rule, advised the Commission on June 14 that he planned to sever his interest in Radio Mid-Pom if Radio Athens' application for construction permit were granted. The Commission has never challenged the bona fides of this expression of intent to act in a manner which in both substance and procedure conforms with announced Commission requirements.

The Commission has claimed that appellant's application must be dismissed because it was not accompanied by a request for waiver. But appellant does not seek and has never sought to receive a special waiver of the rule. What appellant desires is a hearing to consider whether its application for a construction permit should be granted on condition that Mr. Kovlan divest himself of any interest in Radio Mid-Pom. Appellant seeks not a waiver of the duopoly rule, but only application of the Commission's standard technique for assuring its enforcement. The fact that the familiar conditions of divestiture were not attached to the initial application cannot be said to render the application substantially incomplete and the Commission did not so find. The Commission offers no concrete purpose in furtherance of valid interests behind the cut-off or rejection rules that indicated dismissal where the defect, assuming there was one, could be remedied so readily and completely.

16. In sharp contrast is Commission Rule 73.37, 47 C.F.R. § 73.37 (1968), which provides that "no application will be accepted for a new station" if there is a prohibited overlap of certain signal contours.

If the Commission wished to adopt a strict cut-off policy, it should have taken into account that it was dealing with a matter where full and explicit notice is the heart of administrative fairness. Instead of the kind of interpretations cited to us, expanding the definition of disqualifying cross-interest, and silent modification of technique for coping with disqualification problems by shifting from correction-before-grant to dismissal-without-hearing, the agency could and should have proceeded to accomplish its result by exercising its broad rule-making powers. Problems of a different sort might arise [17] but the path would be clear.

■ The Commission is entitled to expect good faith on the part of the broadcasting industry in supplying data requested.[18] The industry is correspondingly entitled to expect rules defining the required content of applications that are reasonably comprehensible to men acting in good faith. Agencies, like courts, may rightly expect attention to be accorded their interpretative rulings, and the process of interpretation is never completely devoid of surprise. But agencies, unlike courts, have the capacity to issue interpretative and other regulations. When the sanction is as drastic as dismissal without any consideration whatever of the merits, elementary fairness compels clarity in the notice of the material required as a condition for consideration.

The Commission's order is reversed and the case is remanded with instructions to the Commission to accept appellant's application for filing *nunc pro tunc,* as of the date it was tendered. It is further ordered that the grant of the application of Valley Broadcasting, Inc., be set aside and that the two applications be consolidated for hearing.

So ordered.

17. Thus its rule may not be so unfairly strict as to contravene the statutory right to a hearing.

18. Lorain Journal Co. v. FCC, *supra* note 14.