NEW YORK PATHOLOGICAL AND X-RAY LABORATORIES, INC., et al.,
Plaintiffs,

v.

IMMIGRATION AND NATURALIZATION SERVICE et al.,
Defendants.

No. 74 Civ. 3011.

United States District Court,
S. D. New York.

Oct. 22, 1974.

Thomas & Alexander, Burlington, Vt., for plaintiffs, by Edward J. Carroll, Burlington, Vt., of counsel.

Paul J. Curran, U. S. Atty., for defendants, by Mary P. Maguire, Sp. Asst. U. S. Atty., of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Plaintiffs, New York Pathological and X–Ray Laboratories, Inc. and its owners, have instituted suit against the Immigration and Naturalization Service and several of its offices and officers. Plaintiffs seek relief from action taken by the Immigration and Naturalization Service pursuant to 8 C.F.R. § 234.2(b) in designating certain civil surgeons and facilities employing civil surgeons to conduct the medical examinations required of aliens seeking permanent resident status under 8 U.S.C. § 1255. Plaintiff laboratory was not included on the list of facilities so designated. At hand is a motion by plaintiffs for a preliminary order enjoining defendants from continuing to refer aliens to the designated facilities or, in the alterna-

tive, to include plaintiff laboratory on the list of facilities so designated.

Prior to August 1, 1973, the physical examination of an applying alien was performed by a medical officer of the United States Department of Health; the X-ray and serology tests were done by a laboratory of the alien's own choosing. Under the new procedure, instituted August 1, 1973, the physical examination is performed by civil surgeons selected under the authorization of 8 C.F.R. § 234.2 which provides in pertinent part:

"(a) *General.* When a medical examination is required of an alien who files an application for status as a permanent resident . . . it shall be made by a selected civil surgeon.

. . .

"(b) *Selection of civil surgeons.* When a civil surgeon is to perform the examination, he shall be selected by the district director having jurisdiction over the area of the alien's residence. The district director shall select as many civil surgeons, including clinics employing qualified civil surgeons, as he determines to be necessary to serve the needs of the Service in a locality under his jurisdiction. Each civil surgeon selected shall be a licensed physician with no less than 4 years' professional experience. Officers of local health departments and medical societies may be consulted to obtain the names of competent surgeons and clinics willing to make the examinations.

. . . . "

Plaintiffs allege that the performance of X-ray and serology tests for aliens constituted a significant portion of their business until the new procedure took effect. They challenge both the regulation authorizing the selection of doctors, and the manner in which the District Director of the New York District made the selection.

■ In order to succeed on their motion for a preliminary injunction plain-tiffs must establish " 'either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief.' " Gresham v. Chambers, 501 F.2d 687, 691 (2d Cir. 1974), quoting Sonesta Int'l Hotels Corp. v. Wellington Associates, 483 F.2d 247, 250 (2d Cir. 1973). See also Gulf & Western Indus., Inc. v. Great Atlantic & Pacific Tea Co., 476 F.2d 687 (2d Cir. 1973).

The plaintiffs fail to satisfy the first criterion of both tests for a preliminary injunction. They have demonstrated neither probable success on the merits nor sufficiently serious questions going to the merits to make them a fair subject for litigation. The regulation complained of, 8 C.F.R. § 234.2(b), withstands plaintiffs' challenges that it was improperly enacted; suffers from vagueness; and violates plaintiffs' due process and equal protection rights.

■■ Plaintiffs argue that the regulation was not instituted in accordance with the requirements of the Administrative Procedure Act, 5 U.S.C. § 553, which provide for notice of a proposed rulemaking to those subject to the rule, an opportunity to be heard, and publication of the rule at least 30 days before the rule becomes effective. However, where a proposed rule relates to agency procedure, the formalities of a rulemaking are not required. 5 U.S.C. § 553(b)(3)(A). The regulation directing that aliens applying for permanent resident status be examined by selected civil surgeons rather than by medical officers of the Department of Health clearly relates to agency procedure and is thereby excused from the requirements of a formal rulemaking.

Plaintiffs argue that where a regulation has a "substantial impact on a regulated industry" that a "semantic distinction" will not save a purportedly procedural rule which is, in reality, sub-

stantive. Pharmaceutical Mfrs. Ass'n v. Finch, 307 F.Supp. 858, 863 (D.Del. 1970); see also Columbia Broadcasting System, Inc. v. United States, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563 (1941). However, the plaintiff laboratory cannot claim to be a regulated industry as were the drug manufacturers in the *Pharmaceutical* case or the broadcasters in the *CBS* case. Rather, the class regulated by 8 C.F.R. § 234.2(b) is composed of aliens applying for permanent residence. Their substantive rights have in no way been altered. The regulation merely provides a more efficient way for the government to process their applications. As was noted in Ranger v. Federal Communications Commission, 111 U.S.App. D.C. 44, 294 F.2d 240 (1961):

"Of course all procedural requirements may and do occasionally affect substantive rights, but this possibility does not make a procedural regulation a substantive one." 294 F.2d at 244.

Clearly the regulation involved in the present case fell within the exception of rules relating to "agency procedure" so that an attack on its validity for failure to comply with § 553 must fail.

■ Similarly, the argument that the regulation is void for vagueness cannot succeed. Vagueness is a due process concept and as such the challenged statute must affect an individual's liberty or a property interest. The cases cited by plaintiffs in support of the vagueness argument all involve protected interests. In Staub v. Baxley, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958) the first amendment right of free speech was threatened by a statute imposing prior restraints without providing standards for the application of the statute. In Giaccio v. Pennsylvania, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966), the challenged statute provided that juries could assess the costs of prosecution against an acquitted defendant. There a property right was involved since a defendant would be required to pay the costs which had been determined according to no definite standards. Likewise,

in Southern Ry. v. Virginia ex rel Shirley, 290 U.S. 190, 54 S.Ct. 148, 78 L.Ed. 260 (1933), a highway commissioner was empowered to call for the construction of overhead railroad crossings by railroad companies when he felt that such construction was necessary. Because the construction would require considerable expenditures by the companies, the Court concluded that due process required the inclusion in the statute of standards on which the commissioner could make such a determination.

■ In all three cases cited by the plaintiffs the challenged statutes authorized the making of a factual determination and a consequent deprivation of a right or imposition of a duty without the adherence to due process. No such determination, right, or duty is involved in the present case. Rather, the Attorney General delegated to a local officer the authority to make an administrative selection of civil surgeons. This selection neither imposed a duty on plaintiffs nor deprived plaintiffs of property. As will be discussed below, there is no right to perform medical examinations of aliens. Therefore, no right was abrogated without due process by the regulation. The vagueness argument must fail.

■ The claim that the effect of the new regulation was to violate the due process rights of the plaintiffs fails by virtue of the same reasoning. The plaintiffs had no property right in the medical examination of aliens.

Among the number of cases cited by plaintiffs for the general proposition that deprivation of liberty or property by the government must be accompanied by due process of law is Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Although the Court in *Roth* was in accord with this general proposition, it denied the plaintiff, an untenured teacher, relief from his dismissal on the grounds that he had no protected property right or interest in the renewal of his contract. To have such an interest the Court said one must "have a legitimate claim of en-

titlement to it." 408 U.S. at 577, 92 S. Ct. at 2709. The Court went on to explain that such a claim of entitlement is created by "rules or understandings that stem from an independent source such as state law". 408 U.S. at 577, 92 S.Ct. at 2709. No statute ever gave plaintiff laboratory in the case at hand the right to examine aliens. In fact, 8 U.S.C. § 1255 gives the Attorney General broad discretion to make rules and regulations for the granting of permanent resident status to aliens.

Plaintiffs cite Blackwell College of Business v. Attorney General, 147 U.S. App.D.C. 85, 454 F.2d 928 (1971), in which the approval granted to a college authorizing it to receive alien students was revoked without due process of law. Plaintiffs' reliance is ill-founded since the approval, which was granted pursuant to a statute, in *Blackwell* constitutes just such a property interest as is lacking in the case at hand. Equally unavailing is Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), in which a driver's license was revoked in contravention of due process.

█ Nor can the due process argument succeed on the theory that freedom to conduct one's business or pursue one's profession without government interference is a right entitled to due process protection. In support of such an argument plaintiffs point to Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959) in which an aeronautical engineer was fired when his security clearance was revoked. His firing was necessitated by the terms of his employer's contract with the government. The Supreme Court held that the plaintiff was entitled to confront and cross-examine any witnesses against him. Plaintiffs also point for support to United States v. Tropiano, 418 F.2d 1069 (2d Cir. 1969), a criminal case under the Hobbs Act in which the defendants were convicted of violating a third person's property right to solicit business when they threatened him with violence should he continue to solicit any of defendant's customers. *Tropiano* was not concerned with the due process to be accorded a property interest in the conducting of a business. Moreover, it sought to define "property" for purposes of the Hobbs Act rather than the fifth amendment. However, even assuming that the definition of "property" is the same for both purposes, *Greene* and *Tropiano* are distinguishable from the present case because they involved clear examples of interference with business; whereas the plaintiffs in the present case remain free to conduct their laboratory business.

█ As for the equal protection argument, it fails even before its merits are considered since the state action requirement of the fourteenth amendment is not met.

█ Finally, the contention that the selection of civil surgeons was a licensing procedure and thereby should have been accomplished in accordance with due process and the Administrative Procedure Act (5 U.S.C. §§ 556, 557) is, likewise, without merit. In Hornsby v. Allen, 326 F.2d 605 (5th Cir. 1964), the court held that the plaintiff could not be denied a liquor license without some explanation of the denial. The court there said that licensing should be done in accordance with "ascertainable standards" and that due process should guide the determination as to whether or not the standards had been met. However, in the case at hand there is no licensing taking place. The defendants made no contention that they would select all laboratories which met their basic requirements. Rather, in order to serve the needs of both the Immigration and Naturalization Service and the aliens, the district director was given discretion to select the fewest such facilities as he determined would suffice.

Neither is this a license within the meaning of the Administrative Procedure Act. Plaintiffs argue that when an application is made for a license required by law, that the agency must conduct proceedings, as set out by the Act,

in order to reach a decision. 5 U.S.C. § 558. Plaintiffs' explanation of the proceedings required in such a situation (5 U.S.C. §§ 556, 557) is exhaustive. Unfortunately, no such comprehensive study is necessary since the case at bar does not involve a "license required by law." Rather, as explained above, an administrative designation of facilities was made to effect the most efficient procedure for the examination of aliens.

In light of the foregoing opinion it is clear that plaintiffs failed to demonstrate either probable success on the merits or sufficiently serious questions on the merits to make them a fair ground for litigation. The motion for a preliminary injunction is therefore denied.

So ordered.