983 F.2d 298
 299 U.S.App.D.C. 273
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
Joseph B. PRATER and Joseph Durham, a Partnership d/b/a
Prater & Durham, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
Carol Sue Bowman, Intervenor.
Sharon Annette HALEY, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
Sumter Radio Partners Iris Communications, Inc., Intervenors.
 Nos. 91-1409, 91-1410.
 United States Court of Appeals, District of Columbia Circuit.
 Dec. 28, 1992.
Rehearing Denied March 15, 1993.
Rehearing Denied in No. 91-1410 and March 15, 1993 Order
Vacated April 27, 1993.
 
 Before SILBERMAN, BUCKLEY, and D.H. GINSBURG, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 These appeals were considered on the records from the Federal Communications Commission and on the briefs and oral arguments of the parties. The court, after full review of the cases, is satisfied that appropriate disposition of the appeals does not warrant opinions. See D.C.Cir.R. 14(c). For the reasons set forth in the accompanying memorandum, it is
 
 
 2
 ORDERED AND ADJUDGED that the orders appealed from in these cases are affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandates herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 15. This instruction to the clerk is without prejudice to the right of any party at any time to move for expedited issuance of the mandate for good cause shown.
 
 ATTACHMENT
 MEMORANDUM
 
 4
 Prater and Durham ("P & D"), a partnership, and Sharron Annette Haley appeal orders of the Federal Communications Commission ("FCC" or "Commission") dismissing their applications for commercial FM radio stations. Appellants claim that the FCC did not provide adequate notice that failure to amend their original applications to affirm their financial qualifications could result in the sanction of dismissal. We hold that the FCC's decisions in Edwin A. Bernstein, 4 F.C.C.R. 8420 (Rev.Bd.1989), aff'd, 5 F.C.C.R. 2843 (Comm'n 1990), and Chudy Broadcasting Corp., 58 Rad.Reg.2d (P & F) 133 (Comm'n 1985), provided ample notice that financial amendments were required, and that dismissal would result from the failure to file such amendments in a timely fashion.
 
 I. BACKGROUND
 A. P & D
 
 5
 On April 8, 1988, P & D filed an application for a permit to construct an FM radio station in Vinton, Virginia. P & D's application contained a negative response to the financial certification question, which requires applicants to check a box to indicate whether "sufficient net liquid assets are on hand or ... sufficient funds are available from committed sources to construct and operate the requested facilities for three months without revenue." Joint Appendix ("J.A. (P & D)") at 5.
 
 
 6
 More than two years later, in a Hearing Designation Order ("HDO") released on May 10, 1990, P & D's application was designated for a consolidated hearing along with three others. See Carol Sue Spraker, 5 F.C.C.R. 2973 (1990). The HDO noted P & D's negative response to the financial certification question and, accordingly, specified a financial issue against P & D. Id. at 2973.
 
 
 7
 At a prehearing conference held on July 20, 1990, the administrative law judge assigned to the case inquired into the status of P & D's financial qualifications. See J.A. (P & D) at 14-15. P & D's counsel responded that P & D had "acquired the necessary sources of financing," and indicated that he would file a motion for summary decision on the financial issue within thirty days. Id. at 15. A colloquy then ensued concerning whether P & D was required to amend the negative financial certification in its application, and whether P & D's submissions on the financial issue would be subject to 47 C.F.R. § 73.3522(b) (1991), which requires a "a showing of good cause for late filing" for amendments submitted more than thirty days after the issuance of an HDO. See id. at 16-19. At the conclusion of this colloquy, the ALJ admitted that "it's hard to tell from the Board cases whether an amendment [to cure a negative financial certification] is necessary or whether it's not necessary." Id. at 19. He nevertheless cautioned P & D's counsel that "the safest course for you to follow is to file a motion for summary decision in short order." Id.
 
 
 8
 On September 21, 1990, the ALJ dismissed P & D's application. See Carol Sue Spraker, FCC 90M-2997 (Sept. 19, 1990), reprinted in J.A. (P & D) at 72. The ALJ cited two grounds for his decision. First, the ALJ determined that "P & D's failure to cure its financial deficiencies in a timely and diligent manner requires dismissal...." J.A. (P & D) at 73. Relying heavily on Bernstein, the ALJ stated:
 
 
 9
 The Review Board has made clear that any effort to demonstrate financial qualifications after the 30 day period allowed after designation for the filing of amendments as "a matter of right," must meet the rigorous "good cause" test for post-designation amendments set forth in Rule 73.3522(b). It is abundantly clear in light of P & D's utter lack of diligence in establishing its financial qualifications that P & D can not meet the required "good cause" test for post-designation amendments.
 
 
 10
 Id. (citations omitted). Second, the ALJ found that dismissal was also warranted on the ground that P & D had failed to comply with its discovery obligations. See id. at 73-74. In particular, the ALJ emphasized that P & D disregarded an order directing it to produce documents relevant to the financial qualifications issue by August 17. See id.
 
 
 11
 The ALJ's decision was subsequently affirmed by the Review Board, see Carol Sue Bowen, 6 F.C.C.R. 10 (Rev.Bd.1991), and by the Commission. See Carol Sue Bowman, 6 F.C.C.R. 4723 (Comm'n 1991). Both the Board and the Commission specifically rejected P & D's contention that prior FCC decisions had not provided sufficient notice of the FCC's policy with respect to financial amendments. See 6 F.C.C.R. at 11-12; 6 F.C.C.R. at 4723.
 
 B. Sharron Annette Haley
 
 12
 On March 10, 1988, Ms. Haley filed an application for a permit to construct an FM radio station in Sumter, South Carolina. Joint Appendix ("J.A. (Haley)") at 8. As in P & D's case, Ms. Haley's application included a negative response to the financial certification question. See id. at 9.
 
 
 13
 In an HDO released on March 19, 1990, the Mass Media Bureau designated Ms. Haley's application and five other proposals for a consolidated hearing. Despite the fact that Ms. Haley had taken no action to amend the negative financial certification on her application, the HDO did not specify a financial issue against her.
 
 
 14
 On May 3, 1990, a competing applicant filed a motion to dismiss Ms. Haley's application on the ground that it lacked an affirmative financial certification. See J.A. (Haley) at 13. After extended discussion of the matter at a prehearing conference, see id. at 39-47, the ALJ assigned to the case denied the motion to dismiss, but did add a financial issue against Ms. Haley. See Sharron Annette Haley, FCC 90M-1475 (June 5, 1990), reprinted in J.A. (Haley) at 60. The ALJ also ordered Ms. Haley to file by June 29, 1990 an amendment under § 1.65 disclosing the status of her financial qualifications which shall include a declaration reciting all steps taken ... to obtain a financing commitment." J.A. (Haley) at 61.
 
 
 15
 On June 29, 1990, Ms. Haley filed a petition for leave to amend her application and an amendment recounting her efforts to obtain the financial support necessary to construct and operate her proposed station. See J.A. (Haley) at 62, 64. In her petition for leave to amend, she stated:
 
 
 16
 The purpose of this amendment is merely to advise the Commission and the other parties to this proceeding of Ms. Haley's efforts to obtain the evidence she plans to use to prove her financial qualifications under the issue added by the Presiding Judge.... By the attached amendment Ms. Haley does not propose any change in the financial certification contained in her application. Rather, she proposes to prove her qualifications, rather than utilize the Commission's certification process.
 
 
 17
 Id. at 82 (emphasis in original). The ALJ accepted Ms. Haley's amendment "solely for purposes of Haley's full disclosure of the steps taken ... to obtain a reasonable assurance of financial qualification." Sharron Annette Haley, FCC 90M-2724, at 2 (Aug. 29, 1990), reprinted in J.A. (Haley) at 88, 89. The ALJ noted, however, that "[t]here is no attempt in the amendment to change her certification on the application from 'No' to 'Yes.' " Id. at 89.
 
 
 18
 Ms. Haley was permitted to present evidence of her financial qualifications at a hearing held on September 17 and 18, 1990. Nevertheless, the ALJ subsequently dismissed her application on the grounds that (1) "Haley's application ... ha[d] never been amended to show a 'Yes' certification," and (2) the evidence she presented at the hearing failed to establish a "reasonable assurance" that she met the financial qualifications requirement. Sharron Annette Haley, FCC 91M-246, at 3-4 (Jan. 23, 1991), reprinted in J.A. (Haley) at 107, 109-110. The Review Board affirmed, resting its decision exclusively on Ms. Haley's failure to file a good-cause financial amendment to redress the negative financial certification in her original application. See Sharron Annette Haley, 6 F.C.C.R. 1567, 1568-69 (Rev.Bd.1991). The Review Board's ruling was in turn affirmed by the Commission. See Sharon Annette Haley, 6 F.C.C.R. 4630 (Comm'n 1991). As in P & D's case, the Commission specifically rejected Ms. Haley's argument that she did not have adequate notice that a good cause post-designation amendment was required. Id. at 4630. Nor did the Commission accept her claim that her June 29 reporting amendment was sufficient to avoid dismissal. Id.
 
 II. DISCUSSION
 
 19
 This court has established that the FCC must provide clear notice of the substantive and procedural standards to be employed in licensing proceedings, particularly when the application of these standards may result in the dismissal of an application without reaching its merits. See, e.g., Satellite Broadcasting Co. v. FCC, 824 F.2d 1, 3 (D.C.Cir.1987); Salzer v. FCC, 778 F.2d 869, 871-72 (D.C.Cir.1985); Radio Athens, Inc. v. FCC, 401 F.2d 398, 404 (D.C.Cir.1968).
 
 
 20
 As a general matter, the FCC's policy on post-designation amendments is set forth in 47 C.F.R. § 73.3522(b), which provides:
 
 
 21
 (b) Postdesignation amendment. (1) Except as provided in paragraph (b)(2) of this section, requests to amend an application after it has been designated for hearing will be considered only upon written petition properly served upon the parties of record ... and will be considered only upon a showing of good cause for late filing....
 
 
 22
 (2) In comparative broadcast cases (including comparative renewal proceedings), amendments relating to issues first raised in the designation order may be filed as a matter of right within 30 days after that Order or a summary thereof is published in the Federal Register, or by a date certain to be specified in the Order.
 
 
 23
 47 C.F.R. § 73.3522(b) (1991). With respect to amendments intended to establish an applicant's financial qualifications, however, the parties agree that at least until 1981, the FCC
 
 
 24
 followed a liberal policy of permitting an applicant to remove a disqualifying factor through amendment during hearing. Applicants were permitted to amend in response to petitions to add financial issues; many months after designation of a financial issue for hearing; on the eve of the hearing; and even after the hearing record was closed.
 
 
 25
 Albert E. Gary, 5 F.C.C.R. 6235, 6236 (Rev.Bd.1990) (citations and quotation marks omitted). At issue is whether the FCC provided clear notice of a change to a more restrictive policy under which (1) the failure to amend a negative financial certification prior to hearing would result in dismissal; and (2) the dictates of 47 C.F.R. § 73.3522(b), including the requirement that applicants show good cause for amendments filed more than thirty days after the issuance of an HDO, would be strictly enforced.
 
 
 26
 Although there does appear to have been some confusion among the ALJs in both these and other cases concerning the Commission's financial amendment policy, we find that the FCC did provide sufficient notice of its new, more restrictive approach. In Bernstein, the FCC explicitly found that a financial amendment is a "condition precedent to prosecution of an application...." 5 F.C.C.R. at 2843 n. 1. The Commission then upheld the Review Board's determination that dismissal was warranted in the case of an applicant who sought to amend a negative financial certification just prior to hearing, but who was unable to "meet the rigorous good cause test for post-designation amendments set forth in 47 CFR § 73.3522(b)...." Bernstein, 4 F.C.C.R. at 8421 (quotation marks omitted).
 
 
 27
 As support for its holding in Bernstein, the Commission relied on Chudy Broadcasting Corp., 58 Rad.Reg.2d (P & F) 133 (Comm'n 1985). See Bernstein, 5 F.C.C.R. at 2843 n. 1. In Chudy, an ALJ denied an applicant's attempt to submit a financial amendment on the ground that "good cause had not been shown for acceptance of the amendment under § 73.3522(b) of the Commission's rules," and then dismissed the application for lack of a financial proposal. 58 Rad.Reg.2d (P & F) at 134. The ALJ's decision was upheld by both the Review Board and the Commission. According to the Commission, the applicant's "failure to show good cause for acceptance of its ... amendment ... leaves it with a proposal that is not financially viable and, hence, a defective application." Id. at 135.
 
 
 28
 Appellants seek to distinguish Chudy on the ground that it involved an application filed on the FCC's pre-1981 application form, which required extensive documentation concerning an applicant's financial proposal. See P & D Reply Br. at 6-7 & n. 4. In their view, Chudy "offered no guidance to applicants such as P & D who had used the new form to indicate that they could not certify to their financial qualifications." Id. at 7. Nevertheless, the Commission's express reliance on Chudy in its Bernstein decision clearly indicates that the Chudy holding is fully applicable to applications filed on the post-1981 form.
 
 
 29
 Thus, at least as of the date of the Commission's final Bernstein decision on May 3, 1990, a prudent attorney should have been on notice that a prompt financial amendment to a negative financial certification was required, and that good cause would have to be shown for amendments submitted more than thirty days after release of an HDO. This is especially true in the present cases, as competing applicants specifically argued that the Bernstein ruling should apply to appellants' post-designation financial submissions.
 
 
 30
 Given our conclusion that Bernstein and Chudy provided adequate notice of the FCC's financial amendment policy, the Commission was fully justified in dismissing appellants' applications. Turning first to P & D's case, P & D made no attempt to amend the negative financial certification in its application. Moreover, although P & D did begin to produce financial documents on September 6, 1990, three weeks after the ALJ had ordered it to do so, it could not at that point have met the good cause test for these or any other submissions relating to its financial qualifications.
 
 
 31
 In order to establish good cause under 47 C.F.R. § 73.3522(b)(1),
 
 
 32
 [T]he applicant must demonstrate that it has acted with due diligence, that the amendment was not required by its voluntary act, that no additional issues or parties would be required, that the hearing process will not be disrupted, that there will be no prejudice to competing applicants, and that the applicant will not gain a comparative advantage.
 
 
 33
 Royce Int'l Broadcasting Co. v. FCC, 820 F.2d 1332, 1335 (D.C.Cir.1987) (quoting California Broadcasting Corp., 90 F.C.C.2d 800, 808 (Comm'n 1982)); see also Erwin O'Connor Broadcasting Co., 22 F.C.C.2d 140, 143 (Rev.Bd.1970). Even when one disregards P & D's failure to amend its application during the two years prior to issuance of the Bernstein decision, P & D's post-designation efforts to demonstrate its financial qualifications were not characterized by "due diligence." Indeed, more than four months after the HDO initially designated a financial issue against P & D, and two full months after P & D's counsel represented at the prehearing conference that P & D had obtained financing, P & D had not amended its application, filed the promised summary decision motion, or submitted full documentation concerning its financial status.
 
 
 34
 As in P & D's case, Ms. Haley failed to amend the negative financial certification in her application despite the notice provided by Bernstein that such an amendment was required. Moreover, Ms. Haley does not allege that she could have met the good cause standard. Ms. Haley contends, nevertheless, that her June 29 reporting amendment qualifies as "the functional equivalent of an amendment to her negative financial certification," Haley Br. at 17, and that it was submitted within thirty days of the addition of a financial issue against her. See id. Her claim that her June 29 amendment was the "functional equivalent" of an amendment to redress her negative financial certification is contradicted, however, by her own statements at the time. As noted above, Ms. Haley's petition for leave to amend explicitly stated that "[b]y the attached amendment Ms. Haley does not propose any change in the financial certification contained in her application." J.A. (Haley) at 62. (emphasis in original). Moreover, the ALJ accepted her amendment on the understanding that "[t]here is no attempt in the amendment to change her certification on the application from 'No' to 'Yes.' " Id. at 89.
 
 III. CONCLUSION
 
 35
 For the foregoing reasons, the Commission's orders are
 
 
 36
 Affirmed.