**ALLIED BROADCASTING, INC.,**
Appellant,

v.

**FEDERAL COMMUNICATIONS COM-
MISSION, Appellee,**

**Lorain Community Broadcasting Com-
pany, Intervenor.**

No. 23423.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 15, 1970.

Decided June 29, 1970.

As Amended Aug. 6, 1970.

Mr. Peter Tannenwald, Washington, D. C., for appellant. Messrs. Harry M. Plotkin, Thomas Schattenfield and William L. Fishman, Washington, D. C., were on the brief, for appellant.

Mr. Joseph A. Marino, Counsel, Federal Communications Commission, with whom Messrs. Henry Geller, General Counsel, John H. Conlin, Associate General Counsel, and Mr. Lenore C. Ehrig, Counsel, Federal Communications Commission, were on the brief, for appellee.

Mr. Robert A. Marmet, Washington, D. C., for intervenor.

Before LEVENTHAL, ROBB, and WILKEY, Circuit Judges.

WILKEY, Circuit Judge:

This is an appeal from an order of the Federal Communications Commission affirming a decision of its Review Board[1] awarding a license for a new AM radio station in Lorain, Ohio, to Lorain

---

1. The Commission denied review of the Board's order, 18 F.C.C.2d 686 (1969). The order was thus in effect affirmed and is given the same force and effect as a Commission decision. 47 U.S.C. § 155(d) (3). The Review Board's initial decision is reported at 13 F.C.C.2d 106 (1968). Its decision on Allied's petition for reconsideration is reported at 14 F.C.C.2d 604 (1968).

Community Broadcasting Company (Intervenor) and denying the applications of Allied Broadcasting Inc., and Midwest Broadcast Company.[2]

The most serious issue raised by appellant Allied, an issue to which the other questions all seem to relate, is whether appellant had adequate notice prior to the hearing in October 1966 that any CATV interest of applicants' stockholders would be considered on the issue of diversification of control of mass communications media in a comparative AM radio license proceeding. We hold that appellant Allied did have such adequate notice prior to the hearing; therefore we affirm the order of the Federal Communications Commission.

The decision of the Review Board, affirmed by order of the Commission, granted the application of Lorain Community and denied those of appellant Allied and Midwest, after an analysis of the applicants' standing under the criteria set out in the Policy Statement on Comparative Broadcast Hearings, 1 F.C.C.2d 393 (1965).

In applying the Policy Statement to the facts of this particular case, the Board pointed out that the two primary objectives toward which the process of comparative hearings of this type are directed are: "(1) the best practical service to the public; and (2) a maximum diffusion of control of mass communications media." 13 F.C.C.2d at 114, n. 18. In this case,

> [a]ll three applicants possessed the requisite qualifications to be licensees of the Commission. From a comparative standpoint, * * * [o]ur choice

must, therefore, be between Lorain Community (clearly to be preferred on the diversification criterion) and Allied (slightly to be preferred on the 'best practicable service criterion'). In these circumstances we conclude that over all the public interest, convenience and necessity would best be served by granting the application of Lorain Community. *Id.* at 114.

The reason why Lorain Community was "clearly to be preferred on the diversification criterion" in the eyes of the Board and the Commission lies in the fact that Michael F. Koury and E. G. Koury, who together own 72 per cent of the stock of Allied, are officers, directors and one-third interest stockholders in Lorain Cable TV Inc., the only CATV franchise holder in Lorain, Ohio.[3] The ownership by the dominant stockholders of the appellant Allied in Lorain Cable, the CATV enterprise, was thus considered to be a substantial demerit in achieving the public policy objective of diversification of control in mass media of communication. At the time of the instant hearing, an applicant's ownership linkage to other mass media of communication would not have been an absolute bar to the granting of an AM radio license,[4] but in a comparative hearing such ownership might well have proven decisive between competing applicants, as indeed it appears to have been in the Commission's eyes in this particular case.

Appellant Allied therefore contends that: (1) a CATV system is not (or, at least, Lorain Cable in its embryonic state at the time of the hearing was not)[5] a medium of mass communication;

2. Midwest Broadcasting Company is not a party to this appeal.

3. The remaining two-thirds is owned by the Lorain Journal Company, which publishes the only daily newspaper in Lorain.

4. Clarksburg Publishing Co. v. FCC, 96 U.S.App.D.C. 211, 225 F.2d 511, 519 n. 25 (1955); Allentown Broadcasting Corp. v. FCC, 94 U.S.App.D.C. 353, 222 F.2d 781, 787 (1954); Plains Radio Broadcasting Co. v. FCC, 85 U.S.App. D.C. 48, 175 F.2d 359, 363 (1949). For

recent Commission policy regarding cross-ownership of broadcast and other media see Frontier Broadcasting Co., 21 F.C.C.2d 570 (1970); Multiple Ownership of Standard, FM and Television Broadcast Stations, First Report and Order, 22 F.C.C.2d 306 (1970) and Further Notice of Proposed Rulemaking, 22 F.C. C.2d 339 (1970).

5. At the time of the hearing, Lorain Cable had not yet begun construction of its system and was awaiting Commission ac-

and (2) even if Lorain Cable can be properly considered a medium of mass communication, Allied had no notice that its dominant stockholders' CATV interest in Lorain Cable would be considered significant for the purposes of this comparative hearing on an AM radio license.[6]

■ As to whether CATV is now one of the mass media of communication, we have no difficulty in saying that, it is.[7] AM and FM radio, TV, newspapers, and even motion pictures have been held to be mass media of communication,

within the policy objectives of the Federal Communications Commission to secure by its licensing procedures a diversity of control of mass media of communication.[8]

■ The question presented here is: did Allied have sufficient notice that CATV would be considered a medium of mass communication by the Commission in September of 1966 when the issues in the present case were designated for hearing, so as to comport with due process requirements?[9] Appellant Allied argues that every case cited by

---

tion on a request for authority to import distant signals into the Lorain area. The distant signal request was subsequently denied and the Lorain Cable system remained unbuilt at the time this appeal was heard. As the Review Board observed, however, "the fact remains that Lorain Cable can begin operation at any time, carrying as many as seven [local area] television signals, without further official action, state or federal." 14 F. C.C.2d at 606–607.

6. In petitioning the Board for reconsideration, the Koury brothers offered to divest themselves of their interest in Lorain Cable, if Allied were awarded the grant. Allied's position is that, had it been given adequate notice that the CATV interest would be considered on the diversity issue, the Kourys would have made such an offer prior to the comparative hearing.

7. See Pikes Peak Broadcasting Co. v. FCC, 137 U.S.App.D.C. 234, 243, 422 F.2d 671, 680 and separate opinion, 137 U.S.App.D.C. at 247–248, 422 F.2d at 684–685 (1969); Midwest ·Television, Inc., 13 F.C.C.2d 478, 508 (1969); General Electric Cablevision Corp., 10 F.C.C. 2d 198, 200 (1967). Indeed, more than two years ago, in upholding the Commission's power to regulate CATV, the Supreme Court noted that CATV systems "promise * * * to provide a national communications system, in which signals from selected broadcasting centers would be transmitted to metropolitan areas throughout the country." United States v. Southwestern Cable Co., 392 U.S. 157, 164, 88 S.Ct. 1994, 1998, 20 L.Ed.2d 1001 (1968).

Since these cases were decided subsequent to the hearing in the instant proceeding, we do not, of course, rely on them as providing any notice to Allied that the CATV interest of its controlling shareholders would be considered as

bearing on its application for a license in a comparative AM proceeding. The indicia of notice to appellant on which we rely are discussed *infra*.

8. Clarksburg Publishing Co. v. FCC, 96 U.S.App.D.C. 211, 225 F.2d 511 (1955) (AM, FM, TV, newspapers); Southland Television Co., 20 F.C.C. 159, 164, 10 R.R. 754, 756 (1955) (motion pictures).

9. *Cf.*, Radio Athens, Inc. v. FCC, 130 U.S. App.D.C. 333, 401 F.2d 398 (1968).

On a procedural point, we have taken appellant's position that once the issues were designated for hearing on September 21, 1966, appellant could not, under FCC rules, have amended its application to reflect either an accomplished divestiture of the Koury brothers' interest in Lorain Cable, or a conditional offer to divest such holdings. Lebanon Valley Radio, 2 F.C.C.2d 287 (1966); *see* 47 C.F.R. § 1.522. The Commission has held that 'good cause' must be shown in order to amend an application after designation of issues for hearing, *Id.* at 289; and that any amendment which would tend to improve an applicant's competitive position *vis a vis* other parties in a comparative hearing cannot be for 'good cause'. *See also* Grayson Television Inc., 11 F.C.C.2d 881 (1968). Thus, in the *Lebanon Valley* case, the Review Board stated:

Cedar's [proposed] amendment will result in the elimination of Smith as part owner and general manager of its proposed station, and the substitution of one or the other partners as general manager. Although Smith is the only partner who has broadcast experience, *he is also the only partner who has other broadcast interests* and is not a local resident of Lebanon. *Thus, the elimination of Smith will improve Cedar's comparative position with respect to diversification of control of mass communications media* and the amount

the Board in relation to CATV involved cross-interests in television broadcasting, and that in September 1966 there was no decision involving an AM radio-CATV evaluation in a comparative case.

One answer to this is clearly found in the 1965 FCC Policy Statement, issued a year before the beginning of the hearings in this case. Policy Statement on Comparative Broadcast Hearings, 1 F.C.C.2d 393 (1965). We consider that the criteria discussed in the Policy Statement would logically include CATV along with TV, AM and FM radio, newspapers and perhaps other media of mass communication.[10] In the Policy Statement the Commission identified the objective of diversification of control of the media of mass communication as "a factor of primary significance" in the evaluation of competing applicants in a comparative broadcast hearing. The Commission explicated this factor as follows:

As in the past, we will consider both common control and less than controlling interests in other broadcast stations *and other media of mass communications*. The less the degree of interest in other stations *or media,*

the less will be the significance of the factor. *Other interests* in the principal community proposed to be served will normally be of most significance, followed by *other interests* in the remainder of the proposed service area. 1 F.C.C.2d at 394 (emphasis added).

In an accompanying footnote, the Commission noted that its rules outrightly "prohibit common control of stations in the same service (AM, FM, & TV) within the prescribed ownership areas" and that in addition,

[l]ess than controlling ownership interests and significant managerial positions in stations and *other media* within and without such areas will be considered when held by persons *with any ownership* or significant managerial interest in an applicant. *Id.* at 394, n. 5 (emphasis added).

The 1965 Policy Statement speaks in general terms; it does not refer specifically to TV or radio. And the general terms used are equally applicable to CATV in its relationship with either radio or TV as to a competitive relationship between TV and radio itself.[11]

of local ownership that will be integrated with management. In view of the emphasis placed on these factors by the Commission in its *Policy Statement on Comparative Broadcast Hearings* [of] July 28, 1965 it is clear that Cedar might gain a competitive advantage as a result of the amendment. *Id.* at 298 (emphasis added).
Therefore, in the instant case, any notice of the materiality of the Koury brothers' interest in Lorain Cable received at the hearing itself would be insufficient. We take the question as being presented on the adequacy of notice to appellant Allied, *prior to* the September 21, 1966 designation of issues for hearing.

10. As we have previously indicated, motion pictures have been held to be a medium of mass communications. In this connection, we note that, apart from the Koury brothers, another of Allied's principals, John P. Tender, who is also Allied's Vice-President and a director, owns several motion picture theatres in the Lorain area. As the Board observed: ·
Tender *is* president, and together with his family, owns all of the stock

in corporations which own theatres in [Lorain, Elyria, and Carlisle, Ohio]. Tender performs all administrative and management duties for the theatres, including the negotiation of contracts with regard to the buying and booking of motion pictures. He is responsible for setting personnel policy and for supervisory maintenance of the theaters. * * * Thus, 92 per cent of the stock in Allied is held by three persons, each of whom owns an interest in a local medium of mass communications. Accordingly, Tender's ownership interest in the motion picture theatres in the Lorain area reinforces our determination under the diversification criterion. 14 F.C.C.2d at 606 n. 6.
Furthermore, it is apparent from this that even if we were persuaded that Allied did not have adequate notice, in respect of CATV, on remand Allied would still be subject to a comparative demerit on the diversity criterion due to Tender's theatre interests.

11. And Commissioner Robert E. Lee in his concurring statement clearly indicated that CATV would be considered a medi-

A similar answer is obtained by evaluating Appellant's argument that a CATV system like Lorain Cable is not a medium of mass communication at all, because it lacks one of the "essential aspects of a mass communications media, *i.e.*, the freedom to be selective in the choice of what is to be printed or broadcast." There are at least two ways in which Lorain Cable could have exercised some editorial selection in what it distributed over its yet to be built CATV system, thus making it a medium of mass communication even within appellant Allied's definition.

While at the time of the hearing the only signals Lorain Cable was authorized to carry were local signals, yet Lorain had then applied to carry distant signals

also. Although the Commission had ordered all distant signal waiver cases held in abeyance, it was quite possible that Lorain Cable along with other CATV systems might be granted this authority. If so, this would enable Lorain Cable to select among the distant signals those which it would transmit over its cable channels.[12]

Secondly, once functioning, Lorain Cable would have the capacity to originate a local program service. It is significant that the Review Board observed "[t]here is no record evidence that Lorain Cable does or does not plan to originate a local program service. However, Allied does not contend that Lorain Cable cannot or will not originate such a service." 13 F.C.C.2d at 112.[13]  Under

um of mass communications in a comparative AM proceeding. 1 F.C.C.2d at 405.

As the Board in the instant case noted, a limitation of the diversity evaluation to certain media combinations, *i. e.*, AM–TV, AM–newspaper, or TV–CATV, "would not be consistent with the dual purpose of the diversification criterion, *i. e.*, the widest possible dissemination of information from diverse sources and the promotion of competition." 14 F.C. C.2d at 607, n. 11.

12. "[A] CATV operator may play more than a passive role in relaying television signals from distant stations. He has the power to choose signals to be relayed and, subject only to the Commission's duplication rules, the operator may pick and choose among specific programs." Acquisition of CATV by Television Broadcast Licensees, (1st report) 1 F. C.C.2d 387, 391 (1965), dissenting statement of Commissioner Henry; *see also* Notice of Inquiry and Proposed Rule Making, Re: All CATV Systems, 1 F. C.C.2d, 453, 459 (1965).

13. In its decision on Allied's petition for reconsideration or rehearing the Review Board stated:

It is an undisputed fact that Lorain Cable has the technical and legal capacity for originating programs and it is that potential which reinforces our determination under the diversification criterion. 14 F.C.C.2d at 606 n. 5.

As additional support for its position that CATV is not a mass communications medium, Allied relies on the following statement by the Supreme Court

in Fortnightly Corp. v. United Artists Television, Inc., 392 U.S. 390, 400–401, 88 S.Ct. 2084, 2089, 20 L.Ed.2d 1176 (1968).

The function of CATV systems has little in common with the function of broadcasters. CATV systems do not in fact broadcast or rebroadcast. Broadcasters select the programs to be viewed; CATV systems simply carry, without editing, whatever programs they receive. Broadcasters procure programs and propagate them to the public; CATV systems receive programs that have been released to the public and carry them by private channels to additional viewers. We hold that CATV operators, like viewers and unlike broadcasters, do not perform the programs that they receive and carry.

While this language may in the abstract tend to support appellant's position, we note that the *Fortnightly* case was concerned with the construction of the Copyright Act, 17 U.S.C. § 1 *et seq.*, and not with the position of CATV as it relates to the Commission's policy of diversification of control of the mass media. As such, the Court merely decided that the transmission of television signals by a CATV system was not a "performance" within the meaning of the copyright law and thus did not subject the CATV operator to liability for copyright infringement. Furthermore, the Court in *Fortnightly* specifically stated that its opinion did not deal with CATV systems that originate programing. 392 U.S. at 392, n. 6, 88 S.Ct. 2084. We therefore do not find the *Fortnightly* case controlling in the instant appeal.

rules put into effect subsequent to the hearing in this case, CATV licensees are *required* to originate some local programs, when the number of their subscribers passes the 3,500 mark.[14]

Thus, under Appellant's own test of whether Lorain Cable TV properly should have been considered one of the mass media communications in October, 1966, i.e., the test of capacity for editorial selectivity, it appears that Lorain Cable could pass that test. And, as also observed, the FCC Policy Statement the year previous had given notice in general terms that diversity of control of all mass media of communication was to be considered in comparative licensing hearings.[15]

We therefore conclude that the appellant Allied had received adequate notice prior to the October 1966 hearing that CATV interests, specifically the one-third interest of the Koury brothers in Lorain Cable, would be considered on the diversity issue in the comparative AM radio licensing proceedings, and that appellant Allied was not denied any due process by the hearing examiner, the Review Board, and the Commission consideration of these CATV holdings in regard to this issue.

In addition to the FCC policy of encouraging diversification of control of mass media of communication, there are other public policy issues which might properly be weighed in a comparative hearing such as this one. For example, some conflict of interest might arise between program selection for the AM radio station and for the CATV channels. Likewise, there might be a discriminatory selectivity in advertising, if common ownership interests were represented in both the AM radio and the CATV stations. Additionally, it is clear that a CATV system has the capacity for carrying aural signals, originating from either AM or FM stations, which could be directly competitive with the AM license sought here.[16]

In summary, while appellant contends that it "initially had no reason to know that the CATV ties were of decisional significance," we believe that appellant Allied knew or should have known that the CATV ties of its dominant stockholders would be evaluated under the FCC criteria of diversification of control of mass media of communication, and that appellant Allied simply failed to predict the weight or the decisional importance which these CATV ties were to have in this admittedly close comparative application hearing.

The Order of the Federal Communications Commission is therefore affirmed.

14. *See* First Report and Order, 20 F.C.C. 2d 201, 208–218 (1969), 47 C.F.R. § 74.1111.

15. In addition, the case law prior to the hearing in this case provided some notice that CATV would be considered a medium of mass communications. In Rust Craft Broadcasting Co., 36 F.C.C. 1556, 1566 (1964), a TV license transfer proceeding, the Commission permitted the transfer of a TV license to a CATV owner, because in the circumstances of that case, it found "no substantial concentration of control of the *media of mass communications* as to require denial of the assignment application." The implication is clear, however, that CATV was nevertheless considered to be a medium of mass communications. And the Commission's finding of "no substantial concentration" in that case was reversed by this court in Citizens TV Protest Committee v. FCC, 121 U.S.App.D.C. 50, 348 F.2d 56 (1965). In Trend Radio Inc., 4 F.C. C.2d 974 (1966), released five days prior to the designation of hearing in the instant case, the Review Board denied a petition to enlarge the issues in a comparative TV proceeding to determine whether cross ownership of a CATV system by one of the applicants for the TV Broadcast license was contrary to the public interest. However, the Board further stated, "*Clearly * * * such joint ownership is a matter for consideration under the comparative issue.*" *Id.* at 977 (emphasis added). *See also* Clarksburg Publishing Co. v. F.C.C., 96 U.S.App. D.C. 211, 225 F.2d 511 (1955); Prairie State Broadcasting Co., Inc., 1 R.R.2d 100 (1964).

16. Harvit Broadcasting Corp., 18 F.C.C. 2d 459, 461 (1969); Notice of Inquiry and Proposed Rule Making, Re: All CATV Systems, 1 F.C.C.2d 453, 476 (1965).