**RADIO STATION WOW, Inc. v. FEDERAL COMMUNICATIONS COMMISSION et al. (two cases.)**

**Nos. 10350, 10359.**

United States Court of Appeals District of Columbia Circuit.

Argued May 16, 1950.

Decided July 17, 1950.

13. Holmberg v. Armbrecht, 1946, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743, 162 A.L.R. 719.

Mr. Paul M. Segal, Washington, D. C., with whom Messrs. George Severn Smith and Philip J. Hennessey, Washington, D. C., were on the brief, for appellant. Messrs. Quayle B. Smith and Harry P. Warner, Washington, D. C., also entered appearances for appellant.

Mr. Max Goldman, Assistant General Counsel, Federal Communications Commission, with whom Mr. Benedict P. Cottone, General Counsel, Federal Communications Commission, and Messrs. Richard A. Solomon and Thomas H. Wall, Attorneys, Federal Communications Commission, were on the brief, for appellee.

Mr. Donald C. Beelar, Washington, D. C., with whom Messrs. Louis G. Caldwell, Roderick Russell Eagan, Washington, D. C., and Elliott Ladd Thurston, Jr., were on the brief, for intervenor. Mr. Percy H. Russell, Jr., Washington, D. C., also entered an appearance for intervenor.

Before WILBUR K. MILLER, PRETTYMAN and PROCTOR, Circuit Judges.

PRETTYMAN, Circuit Judge.

Radio Station WOW, Inc., has for many years operated a radio broadcasting station day and night at Omaha, Nebraska. In October, 1945, the Star Broadcasting Company filed an application for a license to use the same frequency at its broadcasting station at Pueblo, Colorado, which is 503 miles from Omaha. Star represented that its operation would cause no interference to WOW within the latter's protected contour area. The application was set for hearing, and notice was published in the Federal Register,[1] which notice stated that one of the issues was whether the proposed operation would cause objectionable interference to the service of any existing station. The application was consolidated with several others pending. Expert engineers testified that the Star operation would not cause objectionable interference to any other station except one not here involved. After the hearing the Star appli-

1. 11 Fed.Reg. 2280 (March 6, 1946).

cation was severed and granted in October, 1946.

Star's representations as to its non-interference, and the expert testimony of like tenor, were based upon the Standards of Good Engineering Practice Concerning Standard Broadcasting Stations promulgated by the Commission, which included representations as to the ground conductivity in the United States and a map which indicated such conductivity. These representations are rebuttable but, in the absence of contrary evidence, are accepted for purposes of Commission action.

WOW did not participate in the hearing on the Star application or request permission to intervene or otherwise to participate. It did not petition for rehearing or reconsideration of the grant of the application. It is agreed that it at that time relied upon the representations of the Commission's Standards as to ground conductivity.

It developed in the actual operation of the Star station that the conductivity of the earth between Pueblo and Omaha was greater than was reflected in the Standards and that the operation of the Star station did in fact cause objectionable interference with the operation of WOW within its protected area.

When the facts of actual operation became known, WOW, in August, 1948, filed a petition requesting that the Commission require Star to show cause why the Star license should not be modified to require a directional antenna during the daytime so as to eliminate the objectionable interference with WOW. Star opposed this petition. In March, 1949, Star filed an application for a renewal of its license. WOW thereupon filed a petition requesting that the application for renewal be designated for hearing. The Commission, by a memorandum and order dated June 30, 1949, and without a hearing, denied both of WOW's petitions. The two appeals now before us followed. In No. 10350 WOW appealed from the denial of its petition for a rule to show cause why Star's original license should not be modified. In No. 10359 it appealed from the denial of its petition that the Star application for renewal be set for hearing.

Judicial review of orders of the Communications Commission was carefully prescribed in Section 402 of the Federal Communications Act.[2] This court was given jurisdiction under Section 402(b) to review decisions of the Commission in certain specified cases, the statute providing in pertinent part as follows:

"(b) An appeal may be taken, in the manner hereinafter provided, from decisions of the Commission to the United States Court of Appeals for the District of Columbia in any of the following cases:

"(1) By any applicant for a construction permit for a radio station, or for a radio station license, or for renewal of an existing radio station license, or for modification of an existing radio station license, whose application is refused by the Commission.

"(2) By any other person aggrieved or whose interests are adversely affected by any decision of the Commission granting or refusing any such application."

Jurisdiction to review in other cases was conferred by Section 402(a) upon statutory three-judge courts, the Act of October 22, 1913,[3] relative to orders of the Interstate Commerce Commission being made applicable.

We think it quite clear from the above-quoted language of Section 402(b) that this court does not have jurisdiction in No. 10350 but that it does have jurisdiction in No. 10359. The refusal of the Commission to issue upon petition of WOW a rule to show cause why the Star license, long since granted, should not be modified, is not reviewable by this court under Section 402(b). Quite clearly, we think, the "applicant * * * for modification of an existing radio station license" referred to in the statute is the owner of the license. Otherwise the situation would

2. 48 Stat. 926, 1093 (1934), 50 Stat. 197 (1937), 63 Stat. 108 (1949), 47 U.S.C.A. § 402.

3. 38 Stat. 219, 220.

be perpetually chaotic, any person being able to apply for modification of any existing license and hearing and review being required. If WOW had any right of action with respect to the Star license two years after the grant, the right was to bring a suit before a three-judge statutory court under Section 402(a), upon the equitable theory that the operation of Star was causing impingement upon property rights of WOW.

 On the other hand, in March, 1949, Star was an applicant for a renewal of an existing radio station license and as such was within Section 402(b) (1); and we think, for reasons which we shall relate, that WOW was a person whose interests would be adversely affected by a decision of the Commission granting that application for renewal, and as such was within Section 402(b) (2). When Star's original application for a license was pending all persons concerned accepted as correct the computations of ground conductivity promulgated by the Commission in its Standards. It seems to us that they had a right to do so but that in doing so they accepted the risk, in so far as the grant of that license was concerned, that those computations might be in error. The acceptance of that risk would be final except for the statutory provisions as to renewal. Congress provided that no license should be for a term longer than three years and that upon the expiration of its term the license must be renewed, upon application, and that "action of the Commission with reference to the granting of such application for the renewal of a license shall be limited to and governed by the same considerations and practice which affect the granting of original applications."[4] Obviously the provisions for renewal contemplate the possibility of changes in conditions after the

original grant and also of errors in the original grant. It seems to us that typical of such an error would be the acceptance in good faith by all parties of responsible engineering data which in operation proved to be erroneous. Otherwise every existing licensee would be required to protect itself, by the expenditure of whatever time and money might be necessary, against every conceivable error in engineering computations by either an applicant for a new license or by the Commission. The statute says that the renewal must be governed by the same considerations which affect the grant of the original application. Certainly actual interference with an existing station within its protected area is a consideration affecting the grant of an application. An error in good faith as to a proposed operation seems to us to leave that particular matter open for determination upon application for renewal. We repeat, for emphasis, that it is the statutory requirement as to renewal which reopens matters as to which bona fide error was originally made.

We do not mean to intimate that an application for renewal reopens all the questions which were considered upon the original application. This decision is no broader than the facts. It concerns a case in which all parties, acting in good faith upon a factual matter, were in error and in which the error is asserted to have resulted in an unauthorized impingement upon an existing license.

It follows from the foregoing that WOW was entitled to a hearing in respect to Star's application for a renewal of its license.[5] The appeal in No. 10350 is dismissed, and the order of the Commission involved in No. 10359 is reversed and the case remanded to the Commission for a hearing in accordance with this opinion.

4. 48 Stat. 1083 (1934), 49 Stat. 1475 (1936), 47 U.S.C.A. § 307(d).

5. Federal Communications Comm'n v. WJR, 1949, 337 U.S. 265, 69 S.Ct. 1097, 93 L.Ed. 1353.