COMMITTEE FOR OPEN MEDIA, Appellant,

v.

FEDERAL COMMUNICATIONS COMMISSION, Appellee, Chronicle Broadcasting Company, Intervenor.

No. 73–2068.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 11, 1974.

Decided Jan. 22, 1976.

Rehearing Denied March 1, 1976.

**92.** *Id.* (footnote omitted).

**93.** *Id.* at 203, 501 F.2d at 763.

**94.** *Id.* at 201, 501 F.2d at 761.

862

Charles M. Firestone, Washington, D. C., with whom Ellen S. Agress, New York City, was on the brief, for appellant.

Joseph A. Marino, Associate Gen. Counsel, F. C. C., Washington, D. C., with whom Daniel R. Ohlbaum, Acting Gen. Counsel, and Louise A. Sunderland, Counsel, F. C. C., Washington, D. C., were on the brief, for appellee. John W. Pettit, Gen. Counsel, F. C. C., Washington, D. C., at the time the record was filed, Ashton R. Hardy, Gen. Counsel, F. C. C., and R. Michael Senkowski, Counsel, F. C. C., Washington, D. C., also entered appearances for appellee.

Robert L. Heald, Edward F. Kenehan and Marjorie S. Reed, Washington, D. C., were on the brief for intervenor.

John B. Summers, Washington, D. C., lodged a brief on behalf of National Association of Broadcasters as amicus curiae.

Before LUMBARD,* *Senior Circuit Judge* for the Second Circuit, and McGOWAN and ROBINSON, Circuit Judges.

ROBINSON, Circuit Judge:

The Communications Act of 1934 [1] empowers the Federal Communications Commission to grant licenses for operation of broadcasting stations [2] for maximum terms of three years only. [3] Ordinarily, then, licensees must apply for renewal not less frequently than every third year as existing licenses are about to expire. When a substantial question about renewal arises, however, the Commission designates the application for an evidentiary hearing [4] and, as a result, the matter may not be resolved within the three-year period following the terminal date of the license. In the latter event, the Commission does not require the licensee to submit another application on or before expiration of that period. Rather, the Commission continues the license in effect until the renewal proceeding has run its course, [5] and renews the license, if at all, for some ensuing period not exceeding three years.

On this appeal, the Committee for Open Media (COM) challenges the legality of the Commission's dispensation of a second renewal application in those circumstances. Finding no error in adherence to the practice in the proceeding under review, we affirm the orders from which the appeal emanates.

## I. THE ADMINISTRATIVE PROCEEDING

On September 1, 1968, Chronicle Broadcasting Company filed an application with the Commission for renewal of its license, expiring December 1, 1968, for operation of Station KRON–TV in San Francisco, California. [6] On March 20, 1969, the Commission designated the application for an evidentiary hearing; [7] on March 1, 1971, the hearing examiner [8] issued an initial decision in favor of the application; [9] and on May 9, 1973, the Commission rendered its decision renewing Chronicle's license through December 1, 1974. [10]

That the renewal was not granted for a full three-year term—through May, 1976—is the consequence of Commission policy by

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

1. Act of June 19, 1934, ch. 652, 48 Stat. 1064, as amended, 47 U.S.C. § 151 *et seq.* (1970).

2. Whether a radio or a television broadcasting station. Communications Act of 1934, tit. I, § 3(b), (k), (*o*), as amended, Communications Act Amendments, 1952, Act of July 16, 1952, ch. 879, § 2(bb), (cc), (dd), 66 Stat. 711, 47 U.S.C. § 153(b), (k), (*o*), (bb) (cc), (dd) (1970); *United States v. Radio Corp. of America,* 358 U.S. 334, 348–349, 79 S.Ct. 457, 465–466, 3 L.Ed.2d 354, 364 (1959); *Allen B. Dumont Laboratories v. Carroll,* 184 F.2d 153, 155 (3d Cir. 1950), *cert. denied,* 340 U.S. 929, 71 S.Ct. 490, 95 L.Ed. 670 (1951).

3. Communications Act of 1934, tit. III, § 307(d), as amended, 47 U.S.C. § 307(d) (1970), quoted in relevant part text *infra at* note 22.

4. See Communications Act Amendments, 1960, Pub.L. No. 86–752, § 4(a), 74 Stat. 891, as amended, 47 U.S.C. § 309(e) (1970).

5. See Communications Act Amendments, 1952, § 5, 47 U.S.C. § 307(d) (1970), quoted in relevant part text *infra* at note 22.

6. Chronicle also applied for renewal of its license for KRON–FM, a radio broadcasting station. That application is not involved in this appeal.

7. *Chronicle Broadcasting Co.,* 16 F.C.C.2d 882, *reconsideration denied,* 20 F.C.C.2d 903 (1969).

8. Now administrative law judge.

9. *Chronicle Broadcasting Co.,* 40 F.C.C.2d 839 (1971).

10. *Chronicle Broadcasting Co.,* 40 F.C.C.2d 775 (1973). That decision was appealed to this court, *Kihn v. FCC,* No. 73–1627, but the appeal was dismissed by stipulation.

which all licenses in a particular geographical area are made to expire at the same time.[11] To preserve this uniformity when the Commission gives the application more than summary consideration, renewal typically is for a period of less than three years; it extends just to the point at which licenses in the applicant's geographical area will next terminate. Accordingly, Chronicle's application was approved only through December 1, 1974, the date on which all California licenses were to come to an end.[12]

Earlier during the proceeding, on November 1, 1971—more than three years after Chronicle's renewal application was filed, and while it was pending in hearing status—COM had filed a petition to deny the application.[13] On May 23, 1973, two weeks after Chronicle won renewal, the Commission dismissed COM's petition "because of its lack of specificity and the absence of supporting affidavits."[14]

COM petitioned for reconsideration, reminding the Commission that Chronicle did not file a fresh renewal application at the end of the three-year period following expiration of its license in 1968,[15] and arguing that the Commission had violated Section 307(d) of the Act[16] because it had granted a license for more than three years,[17] and for the period subsequent to 1971 without a written application therefor.[18] COM also argued that the absence of a second application had prevented particularized objections to renewal, and had effectively immunized Chronicle from scrutiny and competition. These contentions were rejected by the Commission.[19]

COM now appeals.[20] Its major claims here are those urged upon the Com-

11. See 47 C.F.R. § 73.630 (1974). One purpose of this policy is to provide ample time for preparation of petitions to deny renewal and competing applications for the license. Other considerations also may prompt the Commission to grant licenses for less than three years. See *Fidelity Television, Inc. v. FCC,* 169 U.S. App.D.C. 225, 243–244 n.44, 515 F.2d 684, 702–703 n.44 (1975).

12. See 47 C.F.R. § 73.630(a)(6) (1974).

13. See Communications Act Amendments, 1960, § 4(a), as amended, 47 U.S.C. § 309(d) (1970).

14. *Chronicle Broadcasting Co.,* 41 F.C.C.2d 14, 16 (1973). Commissioner Johnson dissented without opinion. See also Communications Act Amendments, 1960, § 4(a), as amended, 47 U.S.C. § 309(d)(1) (1970); 47 C.F.R. § 1.580(i) (1974).

15. In its decision dismissing COM's petition to deny, the Commission had repelled COM's contention that Chronicle's public file was incomplete for lack of composite week data for 1968–71:

It has been long standing Commission policy that, when an application for renewal of license is designated for hearing, the applicant is not required to file another renewal application for the station until completion of the hearing and the issuance of a final decision on the application. . . . Chronicle, therefore, was not required to have on file composite week data for the 1968–1971 license term for, under Section 1.526 of the rules, 47 C.F.R. 1.526 [(1974)], licensees are only required to maintain in their public files certain specified information filed with the Commission.

*Chronicle Broadcasting Co., supra* note 14, 41 F.C.C.2d at 16. Acknowledging, however, "that the Commission's procedures in this area may work a hardship on members of the public who want to review a licensee's performance during the period its application is in hearing," the Commission stated that it was considering a requirement for filing of composite week and related data, and that, as an interim measure, it was imposing that requirement on Chronicle and all other renewal applicants similarly situated. *Id.* at 17. A regulation permanently adopting that course was subsequently promulgated. See note 64 *infra* and accompanying text.

16. 47 U.S.C. § 307(d) (1970), quoted in relevant part text *infra* at note 22.

17. See Communications Act of 1934, tit. III § 307(d), as amended, 47 U.S.C. § 307(d) (1970), quoted in relevant part text *infra* at note 22.

18. See Communications Act of 1934, tit. III, § 308(a), as amended, 47 U.S.C. § 308(a) (1970).

19. *Chronicle Broadcasting Co.,* 44 F.C.C.2d 717 (1974). Commissioner Hooks concurred in part and dissented in part. See note 41 *infra.*

20. We are unpersuaded by Chronicle's argument that we lack jurisdiction of the appeal. Initially, we find COM's notice of appeal timely. The Commission's May 9, 1973, decision granting renewal ruled on the issues explored at the hearing, *Chronicle Broadcasting Co., supra* note 10, but did not mention COM's petition to deny, which was not dealt with until May 30 following. *Chronicle Broadcasting Co.,*

*supra* note 14. COM's June 23 petition for reconsideration of the May 30 order was well within the statutory time limit, and tolled the period for any later appeal therefrom. Pub.L. No. 87–192, § 3, 75 Stat. 421 (1961), 47 U.S.C. § 405 (1970). The present appeal, noticed October 15, 1973, while the petition awaited Commission attention, complained both of the May 30 ruling and of the Commission's inaction on the petition. Compare, *e. g., Environmental Defense Fund v. Hardin,* 138 U.S.App.D.C. 391, 396–398, 428 F.2d 1093, 1098–1100 (1970). Although the Commission's January 15, 1974 decision denying reconsideration, *Chronicle Broadcasting Co., supra* note 19, mooted the latter grievance, it ripened the May 30 order for judicial review. See cases cited *infra* this note.

The appeal also embraces the May 9 renewal-granting order. That order obviously was the real target of the appeal, for otherwise the appeal is pointless. While it certainly would have been better practice to designate both orders in the notice, technical niceties are to be disregarded when the appellant's purpose may fairly be inferred and the appellee is not prejudicially misled. *Foman v. Davis,* 371 U.S. 178, 181–182, 83 S.Ct. 227, 229–230, 9 L.Ed.2d 222, 225–226 (1962); *Hoiness v. United States,* 335 U.S. 297, 300–301, 69 S.Ct. 70, 71–72, 93 L.Ed. 16, 19–20 (1948); *Bancroft Navigation Co. v. Chadade S.S. Co. v. Caribbean Cruise Lines, Inc.,* 349 F.2d 527, 528–529 (2d Cir. 1965); *Jackman v. Military Publications, Inc.,* 350 F.2d 383, 384 (3d Cir. 1965); *Lumbermen's Mut. Ins. Co. v. Massachusetts Bonding & Ins. Co.,* 310 F.2d 627, 629 (4th Cir. 1962); *Peabody Coal Co. v. Local 1734,* UMW, 484 F.2d 78, 81–82 (6th Cir. 1973); *Nolan v. Bailey,* 254 F.2d 638, 639 (7th Cir. 1958); *Railway Express Agency, Inc. v. Epperson,* 240 F.2d 189, 192 (8th Cir. 1957); *Wright v. American Home Assurance Co.,* 488 F.2d 361, 363 (10th Cir. 1973).

The May 9 order, awarding renewal of the station license, was clearly appealable. Communications Act of 1934, tit. IV, § 402(b), as amended, 47 U.S.C. § 402(b) (1970). The May 30 order, rejecting the petition to deny, was ancillary to the Commission's licensing authority, and likewise was appealable. *Metropolitan Television Co. v. United States,* 95 U.S.App. D.C. 326, 327, 221 F.2d 879, 880 (1955); *Radio Station WOW, Inc. v. FCC,* 87 U.S.App.D.C. 226, 228–229, 184 F.2d 257, 259–260 (1950). See also *Spanish Int'l Broadcasting Co. v. FCC,* 128 U.S.App.D.C. 93, 97–99, 385 F.2d 615, 619–621 (1967).

COM is entitled to seek review of both orders. It is "aggrieved" by the Commission's action, through those orders, in renewing Chronicle's license. Communications Act of 1934, tit. IV, § 402(b)(6), as amended, 47 U.S.C. § 402(b)(6) (1970). Compare *United States v. SCRAP,* 412 U.S. 669, 683–690, 93 S.Ct. 2405, 2414–2417, 37 L.Ed.2d 254, 268–271 (1973); *Office of Communication of United Church of Christ v. FCC,* 123 U.S.App.D.C. 328, 334–340, 359 F.2d 994, 1000–1006 (1966).

We note also, sua sponte, see *Southland Indus's, Inc. v. FCC,* 69 App.D.C. 82, 83, 99 F.2d 117, 118 (1938), that COM filed its notice of appeal while its petition for Commission reconsideration remained pending and unresolved. Years ago this court twice held that those circumstances combine to render the appeal premature and void for lack of jurisdiction. *Id.* at 83–87, 99 F.2d at 118–122 (although petition for reconsideration is subsequently dismissed); *Woodman of the World Life Ins. Ass'n v. FCC,* 69 App.D.C. 87, 88–89, 99 F.2d 122, 123–124 (1938). We need not inquire as to whether these decisions have yielded their vitality to an impressive array of contrary holdings, *e. g., Foman v. Davis, supra,* 371 U.S. at 180–182, 83 S.Ct. at 229–230, 9 L.Ed.2d at 224–226; *Lemke v. United States,* 346 U.S. 325, 74 S.Ct. 1, 98 L.Ed. 3 (1953); *Hamilton v. Stillwell Van & Storage Co.,* 343 F.2d 453, 455 (3d Cir. 1965); *Markham v. Holt,* 369 F.2d 940, 941–943 (5th Cir. 1966); *Keohane v. Swarco, Inc.,* 320 F.2d 429, 432 (6th Cir. 1963); *Song Jook Suh v. Rosenberg,* 437 F.2d 1098, 1099–1101 (9th Cir. 1971); *Morris v. Uhl & Lopez Eng'rs,* 442 F.2d 1247, 1250–1251 (10th Cir. 1971), for in any event we are not disposed to expand their scope. See *Wrather-Alvarez Broadcasting, Inc. v. FCC,* 101 U.S.App.D.C. 324, 326–327, 248 F.2d 646, 648–649 (1957). Here the appeal was taken when after four months, COM concluded that the Commission's delay on the petition was too great, and tantamount to denial. See *Environmental Defense Fund v. Hardin, supra.* In one of its aspects, the appeal was a specific protest of that treatment, and surely an agency's inaction on a request for reconsideration cannot be permitted to foreclose a judicial determination of the consequences of its failure to act. *Id.* We hold that, at the very least, COM's appeal on that score was not premature, and that when the Commission finally disposed of the petition for reconsideration, jurisdiction of the remaining aspects of the appeal attached. See *Wrather-Alvarez Broadcasting, Inc. v. FCC, supra.*

Lastly, the appeal did not become moot when the term for which the Commission renewed Chronicle's license expired on December 1, 1974. "Consideration of important legal issues," we have said, " 'ought not to be, as they might be, defeated, by short term orders capable of repetition, yet evading review . . .' " *Nader v. Volpe,* 154 U.S.App.D.C. 332, 333, 475 F.2d 916, 917 (1973), quoting *Southern Pac. Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310, 316 (1911). Furthermore, on the premise that the Commission improperly granted Chronicle authority to broadcast after December, 1971, COM seeks to re-

mission on rehearing. Chronicle has intervened to join the Commission in defense of its orders.[21] We affirm.

## II. THE RENEWAL APPLICATION REQUIREMENT

COM seeks support for its principal position in Section 307(d) of the Act, providing in relevant part that

[n]o license granted for the operation of a broadcasting station shall be for a longer term than three years . . . . Upon the expiration of any license, upon application therefor, a renewal of such license may be granted from time to time for a term of not to exceed three years . . . . Pending any hearing and final decision on such an application and the disposition of any petition for rehearing pursuant to [42 U.S.C. § 405 (1970)], the Commission shall continue such license in effect. . . .[22]

COM correctly observes that this provision limits the Commission's license grants to terms of three years. From this, COM asserts that the 1968 application was alive only from 1968 until 1971, and that Chronicle's license could not be extended beyond 1971 without another application. We think this argument distorts the plain language of the section.

The only time restriction which Section 307(d) imposes is upon the period for which the Commission itself may confer a license. The Commission may not grant an original license "for a longer term than three years,"[23] and it must confine any renewal to "a term of not to exceed three years."[24] It is evident, however, that these are proscriptions on Commission awards of licenses, and not inexorable limitations on the duration of the licenses themselves, for "[p]ending any hearing and final decision on" a renewal application "and the disposition of any petition for rehearing . . . the Commission shall continue such license in effect"[25]—obviously, beyond the maximum three-year term for which the Commission could award it, if necessary. Thus Congress made specific provision for licenses involved in the renewal process, and unambiguously decreed that they be maintained in operation until "final decision"[26] on the question of renewal. Translating these mandates to the situation at bar, it is seen that, far from the consequences asserted by COM, an extension of Chronicle's license to the point of Commission renewal in 1973 was literally compelled by the language of Section 307(d).

Moreover, that section requires licensees to file renewal applications only "[u]pon the

---

cover, for the benefit of KRON–TV's viewing audience, the profits which Chronicle derived from the allegedly illegal operation. Should one agree with COM on the merits of its appeal, such a remedy would arguably become appropriate. See *Civic Communications Corp. v. FCC,* 149 U.S.App.D.C. 205, 207–209, 462 F.2d 309, 311–313 (1972); *Office of Communication of United Church of Christ v. FCC,* 138 U.S.App.D.C. 112, 127, 425 F.2d 543, 550 (1969). These considerations serve to keep the controversy alive.

21. Additionally, the National Association of Broadcasters has filed a brief as amicus curiae, urging affirmance.

22. 47 U.S.C. § 307(d) (1970).

23. See text *supra* at note 22. COM says that § 307(d) "was clearly aimed at the situation where a hearing did not extend beyond the three year term applied for in the renewal application." Brief for Appellant at 14. We perceive *no support for* this contention in the language of § 307(d) or elsewhere. No restric-

tion on the duration of the statutory extension is expressly imposed, nor does the clear statutory language leave room for implication of such a limitation. Furthermore, renewal applications are not necessarily related to specific three-year periods. If the Commission approved a renewal one year after the filing therefor, the grant at that time could legally be for a full three-year period, although in practice the Commission would confine it to two years in order to maintain the geographical uniformity of license expiration dates. See text *supra* at notes 11–12. Thus, Chronicle's 1968 application was granted in 1973, and the license was renewed for approximately a year and a half, well within the three-year limit imposed by § 307(d).

24. See text *supra* at note 22.

25. See text *supra* at note 22.

26. See text *supra* at note 22.

expiration of [a] license." [27] Chronicle filed, in 1968, a timely application for a renewal of its expiring license. Chronicle did not file another application in 1971, but none was required. Chronicle's license did not run out in 1971; Chronicle was still operating the station by virtue of the extension consequent upon the pendency of its renewal application.[28] That extension was conferred by the statute, not by choice of the Commission; the statute is unyielding in its specification that the Commission "shall continue [the] license in effect." [29] Accordingly, we cannot read Section 307(d) as a call for a renewal application by Chronicle in 1971.

In view of the unmistakable import of Section 307(d), resort to its legislative history is hardly necessary. But lest there be some lingering doubt on this score, we summarize the history to show that it comports with our conclusion. Prior to 1946, there was no statutory extension of licenses pending resolution of renewal applications, but the Commission supplied such an extension by regulation.[30] Section 9(b) of the Administrative Procedure Act, enacted in 1946, provided the same kind of extension for licenses generally [31] in order to protect licensees from harm associated with delays in agency action on requests for license renewals.[32]

The sentence of Section 307(d) by which Chronicle's license was automatically extended first appeared in the 1952 amendments to the Communications Act.[33] The committee reports and debates are silent as to this provision, but Commission Chairman Coy made a highly significant comment during the hearings: [34]

> [The bill] provides that pending the conclusion of any hearing and a final determination on an application for renewal . . . and pending the disposition of any petition for rehearing thereon, the Commission shall continue such license in effect. There is no necessity for the addition of this language to the present provisions of section 307(d) since Section 9(d) [sic] of the Administrative Procedure Act already requires just such a continuation of the license pending completion of the renewal proceedings.[35]

The ineluctable conclusion from this observation is that Sections 9(b) and 307(d) share an identical purpose—protection of licensees from the uncertainties stemming from protracted administrative consideration of applications for license renewals. Indeed,

---

27. See text *supra* at note 22.

28. See text *supra* at note 22.

29. See text *supra* at note 22.

30. 47 C.F.R. § 1.82 (1938). See *Community Broadcasting Corp. v. FCC*, 124 U.S.App.D.C. 230, 235, 363 F.2d 717, 722 (1966).

31. The section originally provided that "[i]n business of a continuing nature, no license expires until timely application for new licenses or renewals are determined by the agency." Act of June 11, 1946, ch. 324, § 9(b), 60 Stat. 242. This provision was reworded without substantive change in 1966. Pub.L. No. 89-554, 80 Stat. 388 (1966). See S.Rep. No. 1380, 89th Cong., 2d Sess. 30 (1966); H.R.Rep. No. 901, 89th Cong., 1st Sess. 14 (1965). The provision now appears at 5 U.S.C. § 558(c) (1970).

32. This purpose was made clear in the House: [This provision is] necessary because of the very severe consequences of the conferring of licensing authority upon administrative agencies. The burden is upon private parties to apply for licenses or renewals. If agencies are dilatory in either kind of application, parties are subject to irreparable injuries unless safeguards are provided. The purpose of this section is to remove the threat of disastrous, arbitrary, and irremediable administrative action. 92 Cong.Rec. 5654 (1946) (remarks of Representative Walter). There is no indication in the legislative history that Congress intended to place any time limit on the extension.

33. Communications Act Amendments, 1952, Act of July 16, 1952, ch. 879, § 5, 66 Stat. 714.

34. Compare *Chicago & N. W. Ry. v. United Transp. Union*, 402 U.S. 570, 576–577, 91 S.Ct. 1731, 1735, 29 L.Ed.2d 187, 193 (1971); *United States v. Henning*, 344 U.S. 66, 72 n.14, 73 S.Ct. 114, 118 n.14, 97 L.Ed. 101, 106 n.14 (1952); *United States v. American Trucking Ass'ns*, 310 U.S. 534, 547–548, 60 S.Ct. 1059, 1066, 84 L.Ed. 1345, 1353 (1940).

35. *Hearings on S. 658 Before the House Comm. on Interstate and Foreign Commerce*, 82d Cong., 1st Sess. 93–94 (1951).

even without Chairman Coy's remark one is led to that conclusion when the texts of the two provisions are compared. And there is no indication in the language or history of either provision that this safeguard is to subsist only for a limited interval.[36]

In addition to the unambiguous statutory language and its enlightening legislative history. we are mindful that "[t]he interpretation expressly placed on a statute by those charged with its administration must be given weight by courts faced with the task of construing the statute." [37] To accord the agency's interpretation that degree of deference, "we need not find that its construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings." [38] On the contrary, "the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong." [39] We have not

been referred to any demonstrable inconsistency in the Commission's interpretation of Section 307(d) in the aspect discussed, nor to any consideration arguing persuasively that it is in error.[40] We hold that Chronicle's license retained its vitality while its application for renewal remained undecided by the Commission, notwithstanding that at no time during that period was it resubmitted.

## III. CITIZEN PARTICIPATION

COM's attack on the Commission's dispensation of a second renewal application by Chronicle rests not only upon an alleged violation of the Communications Act, but also on the premise that the Commission's practice in that regard denies interested citizens and competing applicants effective participation in the renewal process. This challenge brings to the fore troubling aspects of Commission policy identified and sharply criticized in Commissioner Hooks' separate opinion.[41] We first consider

---

**36.** See *Pan-Atlantic S.S. Corp. v. Atlantic Coast Line R.R.,* 353 U.S. 436, 439, 77 S.Ct. 999, 1002, 1 L.Ed.2d 963, 966–967 (1957); *Consolidated Nine, Inc. v. FCC,* 131 U.S.App.D.C. 179, 188, 403 F.2d 585, 594 (1968).

**37.** *Zemel v. Rusk,* 381 U.S. 1, 11, 85 S.Ct. 1271, 1278, 14 L.Ed.2d 179, 187 (1965). See also *Udall v. Tallman,* 380 U.S. 1, 16–18, 85 S.Ct. 792, 801–802, 13 L.Ed.2d 616, 625–626 (1965); *Power Reactor Co. v. Electricians' Union,* 367 U.S. 396, 408, 81 S.Ct. 1529, 1535, 6 L.Ed.2d 924, 932 (1961); *United States v. American Trucking Ass'ns, supra* note 34, 310 U.S. at 549, 60 S.Ct. at 1067, 84 L.Ed. at 1354; *Norwegian Nitrogen Co. v. United States,* 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed. 796, 807 (1933).

**38.** *Unemployment Compensation Comm'n v. Aragon,* 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136, 145 (1946). See also *Udall v. Tallman, supra* note 37, 380 U.S. at 16, 85 S.Ct. at 801, 13 L.Ed.2d at 625.

**39.** *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371, 383–384 (1961); *United Shoe Workers v. Bedell,* 165 U.S.App.D.C. 113, 124, 506 F.2d 174, 185 (1974); *Lenkin v. District of Columbia,* 149 U.S.App.D.C. 129, 141, 461 F.2d 1215, 1227 (1972); *National Ass'n of Theatre Owners v. FCC,* 136 U.S.App.D.C. 352, 358, 420 F.2d 194, 200 (1969), *cert. denied,* 397 U.S. 922, 90 S.Ct. 914, 25 L.Ed.2d 102 (1970); *Trans World Airlines v. CAB,* 128 U.S.App.D.C. 126, 138, 385

F.2d 648, 660 (1967), *cert. denied,* 390 U.S. 944, 88 S.Ct. 1029, 19 L.Ed.2d 1133 (1968); *Brotherhood of R.R. Trainmen v. Akron & B.B. R.R.,* 128 U.S.App.D.C. 59, 90, 385 F.2d 581, 612 (1967); *cert. denied,* 390 U.S. 923, 88 S.Ct. 851, 19 L.Ed.2d 983 (1968).

**40.** We cannot accept the suggestion that § 5(e) of the Communications Act, 47 U.S.C. § 155(e) (1970), imposes time limits on Commission decisions on renewals or reflects a congressional expectation that renewal proceedings will achieve finality within three years. While, in pertinent part, that section requires action designed to expedite the Commission's business with the "objective" of final decision "within six months from the final date of the hearing in all hearing cases," the fact that the six-month period does not begin to run until completion of the hearing erodes the notion of an overall maximum time frame of three years, and the requirement that the Commission report to Congress cases pending longer than that period indicates additionally that some lengthy proceedings were contemplated.

**41.** *Chronicle Broadcasting Co., supra* note 19, 44 F.C.C.2d at 722–725. On the ground that it would be unfair to apply a new standard to Chronicle, Commissioner Hooks concurred in permitting Chronicle to continue operation until December 1, 1974, without the necessity of filing a renewal application for the 1971–74 period. *Id.* at 722–723. He dissented, how-

COM's contention that, without a fresh application after a renewal hearing endures more than three years, members of the public are embarrassed in efforts to resist approval of the application.[42] We then examine COM's complaint that in that situation the application is insulated from the scrutiny afforded by a competing application for the station license.[43]

Chronicle's application, in 1968, asked the Commission to renew the license for Station KRON–TV, a renewal which normally would have been for the 1968–71 period. COM states that when, in 1971, it petitioned the Commission to deny that request, it was unable to make informed objections to Chronicle's operations subsequent to 1968. COM contends that if, in 1971, when the

original application remained in hearing status, Chronicle had filed a renewal application for 1971–74, the data contained therein would have permitted COM to remedy the deficiency.[44]

The Commission found, however, that lack of a 1971 renewal application by Chronicle did not unduly affect COM's ability to frame specific objections to renewal.[45] COM's petition, the Commission declared, "was primarily concerned with the public's right of access to the media,"[46] a position which in the Commission's view had been undermined if not rendered untenable by the Supreme Court.[47] Beyond that, the Commission said, "a renewal application would not show whether a licensee has attempted to present contrasting views on a controversial issue of public importance".[48]

ever, from the Commission's defense, without proposal of a remedy, of the practice of renewal without an application for the period following the one subjected to hearing, *id.* at 723–724, and called for a change of administrative policy, *id.* at 724–725.

42. In this Part III of our opinion.

43. In Part IV hereof.

44. In this court, COM reiterates the claim that it could have derived from such an application information as to Chronicle's past performance during 1968–71 and its proposed operations for 1971–74.

45. The Commission said:
    We do not agree with the Committee's contention that the failure to file a renewal application in 1971 unduly hindered its ability to make informed objections to Chronicle's operations during the 1968–1971 period. The briefest perusal of the petition to deny indicates that the Committee was primarily concerned with the public's right to access to the media. Subsequent to the filing of that petition, the Supreme Court has held that the Communications Act does not impose a common carrier right of access upon broadcasters for all persons wishing to speak out on public issues. Instead, it reposed in this Commission the regulatory authority by which the fairness doctrine was evolved to require that the broadcaster's coverage of important public issues must be adequate and fairly reflect differing viewpoints; thus no private individual or group has a right to command the use of broadcast facilities. *CBS v. DNC,* 412 U.S. 94 [93 S.Ct. 2080, 36 L.Ed.2d 772] (1973). In this respect, a renewal application would not show whether a

licensee has attempted to present contrasting views on a controversial issue of public importance. Also, it is observed that the Committee waited until November, 1971, even to raise its general allegation of unfairness. We expect fairness complaints to be submitted in a timely manner and must take cognizance of this fact in evaluating complaints, particularly in terms of the difficulty which is involved with respect to gathering evidence as to whether a licensee who has presented one side of a controversial issue of public importance has attempted to present contrasting views on that issue. See *Allen C. Phelps,* 21 F.C.C.2d 12 (1969).
*Chronicle Broadcasting Co., supra* note 19, 44 F.C.C.2d at 722.

46. See note 45 *supra.*

47. See note 45 *supra.* See also *Columbia Broadcasting Sys., Inc. v. Democratic Nat'l Comm.,* 412 U.S. 94, 93 S.Ct. 2080, 36 L.Ed.2d 772 (1973); *Miami Herald Publishing Co. v. Tornillo,* 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974); *G. Stone, Fora Americana: Speech in Public Places,* 1974 Sup.Ct.Rev. 233, 234 n.4 (1975).

48. See note 45 *supra.* The Commission also pointed out that a renewal application would not have assisted an effort to show an abuse of discretion in the handling of public service announcements:
    Finally, as to the Committee's allegation relating to Chronicle's handling of public service announcements, preliminary [*sic*] it should be noted that as in other areas of programming a licensee is afforded a wide area of discretion with respect to its choice of public service announcements. See *The*

Moreover, as the Commission stated elsewhere in its opinion, considerable information was available to COM apart from a renewal application.[49] And, the Commission also observed, COM had "waited until November, 1971, even to raise its general allegation of unfairness."[50]

■ We note initially that the door is always open to public participation in the Commission's renewal proceedings, however protracted the particular proceeding may become. Complaints may be filed with the Commission at any time.[51] Informal objections to renewal applications may be urged at any time prior to Commission action.[52] Interested members of the public may seek intervention at any time, even after the hearing stage is reached.[53] Additionally, parties may move to enlarge or change the issues to be heard,[54] and after the hearing

ends the Commission will entertain motions to reopen the record.[55] Nonparties to the proceeding may appear at the hearing for the purpose of offering relevant evidence;[56] even after the Commission has passed on the renewal application, any aggrieved or adversely affected person may petition for reconsideration.[57] And the Commission will consider issues based on events occurring subsequent to the filing of the application as well as those transpiring before.[58]

In addition to the possibility that a renewal application might not have assisted COM in its endeavor,[59] the Commission's regulations and practices fully support its statement that abundant information to undergird specific renewal objections is obtainable.[60] Regulations make available in a local public inspection file a good deal of the information which a current renewal application ordinarily might impart.[61] The

---

*Evening Star Broadcasting Co.*, 27 F.C.C.2d 316, 333 (1971), *affirmed sub nom., Chuck Stone v. FCC*, [151 U.S.App.D.C. 145], 466 F.2d 316, rehearing denied, [151 U.S.App. D.C. 160], 466 F.2d 331 (1972). The Committee presented no concrete evidence that Chronicle abused its discretion in this area and the renewal application would have been of no assistance in proving such an abuse of discretion since it only calls for the number of public service announcements broadcast during a typical week. Of course, as noted above, a licensee is under no obligation to carry all public service announcements submitted for broadcast since it is not a common carrier for the announcements of any organization or individual.

*Chronicle Broadcasting Co., supra* note 19, 44 F.C.C.2d at 722.

**49.** *Id.* at 721 n.2.

**50.** See note 45 *supra.*

**51.** See, *e. g., Western Connecticut Broadcasting Co.*, 28 P & F Radio Reg.2d 1091 (1973) (during license term).

**52.** 47 C.F.R. § 1.587 (1973).

**53.** 47 C.F.R. § 1.223 (1974); *Chronicle Broadcasting Co., supra* note 14, 41 F.C.C.2d at 17 n.4. See also 47 C.F.R. § 1.225 (1974). The only prerequisite to intervention during a hearing is that the applicant show good cause why the petition to intervene was not submitted within thirty days of public notice of the hearing issues or a substantial amendment thereto. 47 C.F.R. § 1.223(d) (1974).

**54.** 47 C.F.R. § 1.229(a) (1974).

**55.** *Chronicle Broadcasting Co., supra* note 14, 41 F.C.C.2d at 17 n.4. Good cause must be shown. *Id.* See note 53 *supra.*

**56.** 47 C.F.R. § 1.225 (1973). The Commission gave notice of the hearing on Chronicle's application and invited nonparties to appear as public witnesses. COM did not seek to participate in the hearing in any manner.

**57.** 47 C.F.R. § 1.106(b) (1973). On a showing of good cause, a petitioner can raise matters not previously considered by the Commission. 47 C.F.R. § 1.106(c) (1973).

**58.** *See, e. g., United Television Co.*, 20 F.C.C.2d 278 (1969), wherein the Commission granted a petition to enlarge issues based on events subsequent to its order designating the renewal application for hearing.

**59.** See text *supra* at note 48.

**60.** The Commission has downgraded the importance of the renewal application as a means of informing the public about licensee operation. See generally *Formulation of Rules and Policies Relating to the Renewal of Broadcast Licenses*, 43 F.C.C.2d 1 (1973). The obvious objective of this departure from prior practice is a continuing dialogue between licensees and their viewers. See *id.* at 8–9, 23, 31–32, 43, 47.

**61.** See 47 C.F.R. § 1.526 (1973), as amended, 38 Fed.Reg. 28788–28789, 35411 (1973), 39 Fed. Reg. 1747 (1974), which sets forth the informa-

file incorporates the renewal application, and the regulations provide the means for keeping data it contains up to date.[62] Beyond that, television broadcasters must ascertain annually the needs of their communities, and must list programs designed to meet them.[63] They must also file annual program reports and program logs for the composite week,[64] and make their station program logs available for public inspection and reproduction.[65] The public file also contains a variety of other potentially helpful data[66] and, of course, monitoring is always available as a tool for appraising station operation.[67]

■ In sum, the Commission's rules and practices contemplate continual scrutiny of a renewal applicant's performance, and continual public participation in the process. To be sure, renewal applications may aid the examination at periodic intervals, but current file information may also provide a basis for assessment of current station operation. On the record before us, we cannot say that that was not adequate, or that COM or other members of the public were substantially hampered by the absence of an additional renewal application in 1971.[68]

tion which licensees are required to maintain in local public inspection files.

**62.** See 47 C.F.R. § 1.65 (1973). Renewal applications proposing significant changes in program format or commercial practices, or proposing decreases in the minimum amount of time the applicant will devote to specified types of programming submitted before renewal is granted, are treated as major changes pursuant to 47 C.F.R. § 1.578 (1973). Amendments of this character must be subjected to public notice, and interested parties may file petitions to deny pursuant to § 309(d) of the Act, as amended, 47 U.S.C. § 309(d) (1970), and 47 C.F.R. § 1.580 (1973), as amended, 38 Fed.Reg. 28789–28790, 35411–35412 (1973). The sole restriction comes into play when an application has been designated for hearing; then the applicant must request acceptance of the amendment to prevent it from unfairly improving the applicant's hearing position by an upgrading of the application. 47 C.F.R. § 1.522(b) (1973). Compare *Allied Broadcasting, Inc. v. FCC,* 140 U.S. App.D.C. 264, 266–267 n.9, 435 F.2d 68, 70 n.9 (1970) (discussing Commission restriction against amendments tending to improve comparative position after designation for hearing) with *Stone v. FCC, supra* note 48, 151 U.S.App. D.C. at 152–154, 466 F.2d at 473–475 (affirming acceptance of amendment prior to designation, and citing policy outlawing last minute upgrading of programming performance in noncomparative proceeding). See also *Chronicle Broadcasting Co.,* 18 F.C.C.2d 120, 122 (Rev.Bd. 1969), wherein Chronicle was precluded from demonstrating meritorious programming broadcast after notice that Commission action was contemplated.

**63.** 47 C.F.R. § 1.526(a)(8) (1974); *Renewal of Broadcast Licenses,* 38 Fed.Reg. 28762, 28779, 35403–35405 (1973).

**64.** 47 C.F.R. § 1.526(a)(8) (1974). These reports set forth statistics on program performance in specified categories of a composite week. A copy of the report and the station's composite week program logs are maintained in the station's public inspection file. *Id.; Renewal of Broadcast Licenses, supra* note 63, 38 Fed.Reg. at 28780–28783, 35405–35406.

**65.** 47 C.F.R. § 1.526(a)(10) (1974). Program logs for the preceding two years must be made available upon request for public inspection and reproduction. *Id.; Maintenance of Program Records,* 39 Fed.Reg. 1763, *reconsideration denied,* 39 Fed.Reg. 9466 (1974).

**66.** *E. g.,* ownership reports, 47 C.F.R. § 1.615 (1974); annual employment reports, 47 C.F.R. § 1.612 (1974); records concerning candidates for public office, 47 C.F.R. § 73.657(d) (1974); letters from the public concerning station operation, 47 C.F.R. § 73.1202(d)(2)(vi) (1974) as amended, 38 Fed.Reg. 35412 (1974); *Renewal of Broadcast Licenses, supra* note 63, 38 Fed. Reg. at 28762.

**67.** See *Broadcasting in America: Arkansas, Louisiana, and Mississippi for 1973,* 42 F.C. C.2d 3, 109–117 (1973) (dissenting opinion). See also *Lamar Life Broadcasting Co.,* 38 F.C.C. 1143, 1147 n.8, 1153 (1965); *Office of Communication of United Church of Christ v. FCC, supra* note 20, 123 U.S.App.D.C. at 332 n.4, 359 F.2d at 998 n.4.

**68.** Although access to some information was provided by regulations promulgated after COM filed its petition to deny, there is no indication that COM has at any time tried to cure the deficiencies which the Commission found in its petition. Even now there is no convincing explanation as to why that could not have been done from information then publicly available. A remand to afford COM an opportunity to amend its petition would now be meaningless since presumably it was able to raise the same issues in any proceeding by Chronicle to renew the license following its latest expiration in 1974. And we can only conclude that whatever prejudice COM may

## IV. COMPETING APPLICATIONS

COM's final contention is that the Commission's ruling subverts the statutory scheme of license regulation by immunizing incumbent licensees from competing applications for station licenses. A Commission regulation establishes time periods beyond which applications mutually exclusive with renewal applications will not be accepted,[69] and fixes those points with reference to license-term expirations and renewal-application filings.[70] If a renewal application were required every three years, a competing applicant could present his challenge every third year; but since the Commission will not entertain competing applications after a license-renewal proceeding has arrived at the hearing stage, the licensee benefits increasingly as the proceeding becomes more and more prolonged.[71] Indeed, in the case at bar, the statutory extension of Chronicle's license term[72] combined with the cut-off of competing applications to insulate Chronicle from competition for six years.[73]

The Commission did not, however, believe that

have suffered—and we do not intimate that there was any—is now nonrecurrent because of the data afforded by licensees' local public inspection files.

69. "Except as provided in subparagraph (2) of this paragraph an application for a construction permit for a new broadcast station or for modification of construction permit or license of a previously authorized broadcast station will not be accepted for filing if it is mutually exclusive with an application for renewal of license of an existing broadcast station unless it is tendered for filing by the end of the first day of the last full calendar month of the expiring license term: Provided, That if the license renewal application is not timely filed as prescribed in § 1.539(a), the deadline for filing applications mutually exclusive therewith is the 90th day after the Commission gives public notice that it has accepted the late-filed renewal application for filing . . . ." 47 C.F.R. § 1.516(e)(1) (1974).

70. See note 69 supra. The Commission distinguishes in this regard between applications in hearing status and those which are not. When a renewal application remains pending for more than three years but has not been designated for a hearing the licensee is required to file a supplement which is equivalent to a new

petitioner's hypothetical competing applicant [is] significantly prejudiced by our procedure. In the first instance, we would not accept a competing application against a renewal application in hearing status until we had finally disposed of the renewal application. If we determined that the renewal application should be denied, the frequency would of course be open to all interested applicants at that time. If we determined that the renewal application should be granted, a competing applicant would be entitled to have its application considered at the time of the next regular renewal. We see no reason to give a hypothetical competing applicant protected status by accepting its application before the renewal application proceeding has been decided. Where the renewal application is granted, we believe that the slight inconvenience to such applicant is more than outweighed by the administrative advantages of this more orderly procedure.[74]

As we have noted, Commissioner Hooks dissented vigorously from the Commission's decision to leave the solution at just that.[75]

renewal application. The Commission treats this filing as a major amendment, triggering the opportunity to file timely petitions to deny and competing applications. There is no similar requirement or opportunity when an application is in hearing status.

71. See note 69 supra. As we have noted, the situation differs where, after three years, the application has not been designated for hearing. See note 70 supra.

72. See Part II supra.

73. The time could be substantially longer than six years. Cf. Greater Boston Television Corp. v. FCC, 149 U.S.App.D.C. 322, 327–328, 463 F.2d 268, 273–274 (1971), cert. denied, 406 U.S. 950, 92 S.Ct. 2042, 32 L.Ed.2d 338 (1972). And Congress has considered lengthening the three-year license term to four or five years. See S.Rep. No. 1190, 93d Cong., 2d Sess. 4 (1974); H.R.Rep. No. 961, 93d Cong., 2d Sess. 13 (1974).

74. Chronicle Broadcasting Co., supra note 19, 44 F.C.C.2d at 721.

75. Id. at 722–725. See also note 41 supra.

As we view the matter, there is much to be said on both sides.

COM's complaint does not stem peculiarly from the Commission's construction of Section 307(d) as a dispensation of a second renewal application while a first renewal application remains in hearing status.[76] There is no legislative or judicial barrier to allowance of competing applications for station licenses during ongoing hearings;[77] the problem arises more directly from the Commission's cutoff regulation,[78] which is drawn into this litigation more obliquely. Moreover, the cutoff procedure was suggested by the Supreme Court as an aid to processing of mutually exclusive applications for station facilities,[79] and has been commended by this court.[80] As we have had occasion to observe, "the device of [a] cutoff [is] a reasonable and necessary limitation in the statutory right to a comparative hearing. There must be some point in time when the Commission can close the door to new parties to a comparative hearing or, at least hypothetically, no licenses could ever be granted."[81]

Similarly, without a moratorium on competing applications while a renewal hearing progresses, a final resolution on renewal might be severely hampered. Intelligent consideration of a late-filed competing application might dictate a reopening of the hearing record for cross-examination of previous witnesses, objection to exhibits already admitted, introduction of new evidence and retrial of issues. Thus final Commission action might unavoidably be postponed into the next three-year renewal period, with the spectre of repetition of the entire process upon entry of yet another competitor. Both the renewal and the competing applications might suffer intolerable delay, if indeed not utter frustration, through the Commission's inability to draw the proceeding to a close.

On the other side of the coin, the Commission's ruling indubitably deprives a station's viewing and listening audiences, perhaps for a long time, of potential license competition that normally propels a licensee to better broadcasting. In particular situations it might also deprive the public of use of the broadcast frequency by the best available licensee. In a drawn-out renewal proceeding, as we encounter here, the incumbent licensee has simply to demonstrate that it meets basic public interest qualifications, and it is relieved of the scrutiny inherent in comparison of its past operations and future plans with a competitor's proposals.[82] A petition to deny renewal forces a choice merely between the renewal application and nothing; without a comparative proceeding, the Commission may well be swayed by the conviction that "minimal service is to be preferred to no service at all."[83] And it is instances where renewal hearings are conducted that the public stands to benefit most from participation by a competing applicant.[84]

We do not, however, debate the issue further, for there is no need to resolve it in the case now before us. COM was not a competing applicant, and no one pressed a

76. See discussion in Part II *supra*.

77. See Part II *supra*.

78. See note 69 *supra*.

79. *Ashbacker Radio Corp. v. FCC*, 326 U.S. 327, 333 n.9, 66 S.Ct. 148, 151 n.9, 90 L.Ed. 108, 113 n.9 (1945).

80. *Radio Athens, Inc. (WATH) v. FCC*, 130 U.S.App.D.C. 333, 335–336, 401 F.2d 398, 400–401 (1968); *Century Broadcasting Corp. v. FCC*, 114 U.S.App.D.C. 59, 61, 310 F.2d 864, 866 (1962); *Ranger v. FCC*, 111 U.S.App.D.C. 44, 47, 294 F.2d 240, 243 (1961).

81. *Radio Athens, Inc. (WATH) v. FCC, supra* note 80, 130 U.S.App.D.C. at 335–336, 401 F.2d at 400–401.

82. See *Citizens Communications Center v. FCC*, 145 U.S.App.D.C. 32, 41, 447 F.2d 1201, 1210 (1971).

83. H.R.Rep. No. 961, 93d Cong., 2d Sess. 17 (1974); *Fidelity Television, Inc. v. FCC, supra* note 11, 169 U.S.App.D.C. at 243, 515 F.2d at 702 (1975).

84. See *Citizens Communications Center v. FCC, supra* note 82.

competing application while Chronicle's renewal application remained in a hearing posture.[85] The Commission was thus summoned to examine Chronicle's qualifications to continue operation of the station simply in light of the statutory public-interest standard, without regard to what another applicant for the station might be inclined to offer. Whatever may be the relative values of administrative and other countervailing considerations in the spectrum of public interest when competition is offered, there is no call to strike the balance here. It will be time enough to undertake that task if and when an appropriate occasion is presented.

The orders appealed from are accordingly

*Affirmed.*

---

**85.** The Commission did deny a petition to intervene by Bay Area Television, Inc., filed April 25, 1969. *Chronicle Broadcasting Co.,* 40 F.C.C.2d 839, 885 n.74 (1971). The petition stated Bay Area's intention to file an application competitive with Chronicle as soon as possible, but no more definite intention was ever made known to the Commission, and no competing application was ever filed.